## THE T. J. SCHUYLER *v.* THE ISAAC H. TILLYER.[1]

*(Circuit Court, E. D. Pennsylvania.* November 2, 1889.)

1. TOWAGE—NEGLIGENCE OF TUG.
    A large schooner at anchor at the mouth of the Schuylkill river was taken in tow by a tug at low water, to be carried to her wharf on that river, the tug choosing her own time. While passing through a draw, she was drawn by the set of the current against an obstruction about six feet from the pier of the bridge, and the same distance below the surface of the water. *Held,* as the towage could have been performed at a time of higher water, and as the tug could have kept further away from the pier, she was chargeable with negligence.

2. SAME—DUTY OF TOW.
    A tow that endeavors, while under the control of the tug, to follow as nearly as possible in her wake, is not responsible for any injury happening to her while so doing, occasioned by running against obstructions.

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.
Affirming 35 Fed. Rep. 551.

In Admiralty.

Appeal from district court. For former opinion, see 35 Fed. Rep. 551. Libel by the schooner Isaac H. Tillyer against the tug T. J. Schuyler, to recover damages sustained while being towed up the Schuylkill river.

*Coulston & Driver*, proctors for The Schuyler, appellant.

*Flanders & Pugh*, proctors for The Tillyer, appellee, cited, as to the responsibility of tugs, *The Robert H. Burnett*, 30 Fed. Rep. 214; *Willey v. City of Allegheny*, 12 Atl. Rep. 453; *The Lady Pike*, 21 Wall. 1; *The Mohler*, Id. 230; *The Delaware*, 20 Fed. Rep. 798; *The Henry Chapel*, 10 Fed. Rep. 777; *The Effie J. Simmons*, 6 Fed. Rep. 639; *The Ellen McGovern*, 27 Fed. Rep. 868.

McKENNAN, J. On the 2d day of July, 1886, about 1 o'clock A. M., the schooner Isaac H. Tillyer arrived off the mouth of the Schuylkill, and anchored there. She had a cargo of about 869 tons of ice, which was consigned to the Knickerbocker Ice Company, and was to be delivered at the Pine-Street wharf. About 9 A. M. of that day she was taken in tow by the tug Schuyler, to be conveyed to her destination at Pine street, and was towed astern by cross-hawsers of 25 to 30 fathoms in length. The tide was then running down the river. Some distance up the river a new bridge had been constructed across it, known as the "Baltimore & Ohio Railroad Bridge," between the piers of which it was necessary for the tow to pass. Before this point was reached there was a shoal running out from the westerly side of the river, and extending nearly across it. It was necessary to go round this shoal, and hence the schooner, as directed by the tug, put her wheel to port, and so held it until she passed a point of rocks on the eastern side, when, as she was ordered, she put her wheel to starboard in order to pass through the eastern draw of the bridge. By the set of the current, and being drawn too near to the pier, she was brought into contact with some obstruction about six feet below the surface of the water, and about the same distance from the pier. A large hole was knocked in her bottom, and she suffered considerable injury. This suit was therefore brought to recover the damages caused to the schooner by the alleged negligent or unskillful performance by the tug of the service which she undertook to perform.

Whether she did so or not is mainly, if not entirely, a question of fact, which it is not necessary to discuss at length or in detail. It is sufficient to state the conclusions at which I have arrived from the evidence. While the tug did not stipulate for the absolute safety of the schooner, yet she was bound to meet such requirements of her service as would enable her to render it with safety to the schooner. She must know the depth of the water in the channel; the obstructions which exist in it; the state of the tides; the proper time of entering upon her service; and, generally, all conditions which are essential to the safe performance of her undertaking. If she failed in any of these requirements, or in the exercise of adequate skill or care, she is justly subject to

an imputation of negligence. Was the tug derelict in any of these respects? She might have started when the tide was at a higher stage than it was when she began her movement up the river, and thus, with deeper water, have insured the safety of her tow. When she approached the pier of the bridge she might and rightly ought to have kept further away from it, for which there was ample room, and thus have avoided the risk of collision with it, or with the obstruction under the surface of the water. This was the mistake, which has resulted in the injury complained of, and I am satisfied it is chargeable solely to the tug.

Was the schooner in fault? Her movements were under the control of the tug, and that she endeavored to follow as nearly in the wake of the latter as she could is not only probable, but the hypothesis is sustained by the weight of the evidence. Upon the whole case, I am satisfied that the decision of the district court is right, and therefore the amount awarded by it, viz., $1,333.40, is decreed by this court to be paid by Thomas Gould, claimant, and William R. Morris his stipulator, to the libelant, with interest from December 7, 1888, and with costs to be taxed.