### THE HARRY M. WALL.

### THE JOHN E. MEHRER.

(District Court, E. D. Pennsylvania. February 14, 1911.)

#### No. 48.

1. TOWAGE (§ 11*)—STRANDING OF TOW—LIABILITY OF TUG.
   A tug, which with another undertook to tow a steamship up the Schuylkill to a wharf, and whose master had full charge of the operations, *held* in fault and liable for an injury to the tow by stranding, due to his miscalculation of the stage and effect of the tide, which was ebb and created a current strong enough to prevent the steamship from properly making the turn to the right after passing through the draws at Gray's Ferry.
   [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

2. TOWAGE (§ 4*)—DUTIES OF TUG TO TOW.
   The master of a tug is bound to use reasonable care and skill in the management of the tow, and to exercise them in everything relating to the work until it is accomplished.
   [Ed. Note.—For other cases, see Towage, Cent. Dig. § 4; Dec. Dig. § 4.*]

In Admiralty. Suit by the English & American Shipping Company against the tugs Harry M. Wall and John E. Mehrer. Decree for libelant.

Kenneth Gardner, for libelant.
John F. Lewis and Francis C. Adler, for the Harry M. Wall.
Henry R. Edmunds, for the John E. Mehrer.

J. B. McPHERSON, District Judge. This suit was brought against the owners of the tug Harry M. Wall for negligent towage, and these owners impleaded the tug John E. Mehrer under rule 59. The facts are as follows:

The Murcia is a British steamship, built of steel, 303 feet long, 41½ feet beam, of 2,644 tons gross register, and at the time of her injury was carrying a cargo of ore, and was drawing 21 feet aft and about 20½ feet forward. She was to be discharged at Harrison's wharf on the Schuylkill river, about three-eighths of a mile above the most northerly of the two bridges that span the Schuylkill at Gray's Ferry;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

but she was stranded on the west bank of the river immediately after passing the bridge just referred to, and suffered the damage complained of. The question now presented is whether the tugs, either or both, are liable for the injury. Some effort was made on the part of the Wall to fix the fault upon the steamship herself; but very little need be said concerning this effort, except that it did not succeed. It appeared clearly that, in accordance with the usual custom, the steamship was in the hands of the tugs, and it appeared with equal clearness that the master of the Wall was the dominant mind, solely in charge of the towing service. It follows that he and the owners whom he represented are liable for any fault committed in the course of the work. The evidence further shows that Augustus Wall, who was the managing owner of the Wall, had a contract with the American agents of the line to which the Murcia belonged to do the towing needed at the port of Philadelphia for 1906. On February 10th of that year he was notified that the Murcia was about to arrive, and that she was to be taken to a berth of discharge in the Schuylkill river. As she would need the assistance of two tugs, the Mehrer was also employed, and on February 11th these two tugs met the Murcia on the Delaware river, not far below the mouth of the Schuylkill. A pilot was then in charge of the Murcia; but the master of the Wall relieved him, and took full control of the tow, directing where the tugs should take hold, and how the voyage should be conducted. The master of the Murcia had never been up the Schuylkill, and naturally relied fully upon the person in charge of the tow. Capt. Knox, of the Wall, was upon the bridge of the Murcia during the whole voyage, with the master of the Mehrer and the master of the Murcia; but he gave all the orders himself—although as frequently happens they were sometimes repeated by the others—and assumed complete responsibility for the service. Before the tow began, the masters of the tugs conferred about the stage of the tide, and agreed that there was ample time to take the steamship to her berth. At that conference the master of the Mehrer probably supposed that the asphalt wharf was the steamship's berth; but Capt. Knox knew that she was bound for Harrison's wharf, and in any event the two points are so near each other that the stage of the tide sufficient for one would be sufficient for the other. Harrison's wharf is northeast of the two bridges known as "Gray's Ferry Railroad Bridge" and "Gray's Ferry Bridge" respectively, and lies around a bend in the river. These two bridges are so close together as to be joined by cribbing, and immediately above them the river curves sharply toward the east, or starboard, facing north, making a turn that is not easy to negotiate at any time, especially in view of the fact that the river is very narrow at this point, and calls for careful and skillful navigation. The difficulty is increased by the further fact that the draws of the bridges are too narrow to permit a vessel as broad as the Murcia to pass through with tugs lashed to her sides. Moreover, an added difficulty must be encountered if the tide should be ebb; for in that event the current flows southwesterly around the bend, strikes against the side of a ship as she emerges from the draw, and tends to drive her against the western bank of the river, thus in-

creasing the danger that she may not obey her helm promptly in mak-'ing the turn, and may not swing readily to starboard after passing the bridges.

[1] In my opinion, it is here that the principal fault of the Wall is to be found: Capt. Knox miscalculated the stage of the tide. By the time he had reached Gibson's Point on the Schuylkill, probably a mile below Harrison's wharf, it was plain that the tide had turned, and that, instead of having the last of the flood, or at least slack water, as he expected, he would be obliged to face the ebb. Of course, such a situation called for added caution; but his maneuvers were not successful. As was necessary, he cast off the tugs from the sides of the Murcia as the tow approached the bridges, and she proceeded slowly under her own steam. One of the tugs tried to hasten through the other draw, so as to make fast as soon as the steamship should be clear, and thus assist her to make the turn; but this was not done, and the tugs rendered no assistance whatever. Under the orders of Capt. Knox, who was still in charge on the Murcia, the helm was put hard aport and the engines were reversed as soon as the steamship had cleared the draw; but she did not respond properly, and continued nearly straight ahead until she stranded near the western shore. As I believe, her failure to respond was due in large part, if not wholly, to the ebb tide setting against her starboard bow, and the stranding would not have occurred if this had not taken place. It is also true that her head might have been directed to starboard, if one of the tugs had preceded her through the bridges on a hawser, or had passed through the other draw in time to make fast on her starboard bow; but this need not be insisted upon. As it seems to me, the fundamental fault of Capt. Knox was his miscalculation about the tide, and as this is sufficient to account for the disaster it is unnecessary to look further.

[2] The master of a tug is bound to use reasonable care and skill in the management of the tow, and to exercise them in everything relating to the work until it is accomplished. "The want of either in such cases is a gross fault, and the offender is liable to the extent of the full measure of the consequences." The Margaret, 94 U. S. 494, 24 L. Ed. 146. In The T. J. Schuyler (C. C.) 41 Fed. 477, it was said by the Circuit Court of this district that a tug is bound to meet such requirements of her service as will enable her to render it with safety to the tow. She must know the depth of water in the channel, the obstructions which exist in it, the state of the tides, the proper time of entering upon her service, and, generally, all the conditions which are essential to the safe performance of her undertaking. If she fail in any of these requirements, or in the exercise of adequate skill or care, she is justly subject to an imputation of negligence. In The Florence (D. C.) 88 Fed. 302, the master of a tug is declared to be responsible for the exercise of ordinary diligence, and for knowledge of "the condition of the river, the width of the channel and the tow, and the effect of the tide." And Judge Holland, in The Potomac (D. C.) 147 Fed. 293, recently held that the captain of a tug was required to know the effect of the tide upon a tow entering one of the

affluents of the Delaware, and other conditions necessary to enable him safely to tow the vessel in his charge.

There is nothing to show fault on the part of the Mehrer. As I think, the Wall was solely to blame, and a decree to that effect may be entered. If the parties cannot agree upon the amount of damage, a commissioner will be appointed.