## THE HELEN.

(District Court, E. D. New York.)

**Collision ☞71(1)—Towing company alone liable for collision.**

> Where a towing company was engaged by owner of steamship to move that vessel out of a slip, and such company took charge of the ship and proceeded to maneuver the ship under its own power, its officers and crew simply carrying out the instructions given them, the object of maneuvering ship being to get it in a position where the tugs could come in contract, the towing company and not the steamship was liable for a collision occurring during such maneuvering.

In Admiralty. Libels by J. P. Clark against the steamship Helen and the steam tugs W. S. Holbrook, S. W. Holbrook, White Ash, and A. S. Sherman, and by Burns Bros. against the steamship Helen, the the Hull Insular Steamship Company, claimant, with the Holbrook Towing Line, Inc., and others impleaded. Decree entered against the Holbrook Towing Line only.

Park & Mattison, of New York City, for libelant Clark.
Alexander & Ash, of New York City, for libelant Burns Bros.
Duncan & Mount, of New York City, for the Helen.

LYNCH, District Judge. At the conclusion of the trial I stated as follows:

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"As I view the facts, the mistake was made in attempting to take the Helen out under the conditions which existed at that time. I cannot find that the tugs made any mistakes in what they did. There is no evidence, certainly not sufficient evidence, on which to base a decision that the tugs acted improperly, or did things which they should not have done. They did everything that was expected of them. But something was attempted which should not have been attempted. The Helen, while under the direction of Capt. Snyder, caused the damage. The barges, so far as I can see, were without fault."

I then took under advisement the scope of the decree which should be entered. As I recollect the facts, the Holbrook Towing Line was engaged by the owner of the Helen to move that vessel out of the slip at which she was moored, and Capt. Snyder, master of the tug A. S. Sherman, proceeded with his tug and one other to the slip. Upon considering the conditions existing, he hesitated about attempting to take the Helen out with two tugs, but after telephoning for and obtaining the assistance of two additional tugs (four altogether) he decided to and did undertake the enterprise. Capt. Snyder, as the master of the fleet of tugs, took his post on the Helen, while the four tugs stood by waiting for her to move out to a position where they would be enabled to come in contact with her, for the purpose of assisting in keeping her straight in the tide and away from the nearby boats, scows, and the dock. The pathway was quite narrow and the tide was ebb, and, as I stated in my conclusion at the close of the trial, it was a mistake to attempt to take her out under the conditions which existed at that moment. Boats were lying near by, and it seemed that a collision would be inevitable. Notwithstanding this, Capt. Snyder on the bridge of the Helen started maneuvering the Helen under her own power; the officers and crew of the Helen simply carrying out the instructions given to them by Capt. Snyder. She backed out but a very short distance when a collision occurred, causing damage to the libelants' barges.

Who is liable—the Helen or the Holbrook Towing Line, or both? If both are liable, in what order are they liable? In 1860 in the case of Sturgis v. Boyer et al., 24 How. 110, 16 L. Ed. 591, the United States Supreme Court had this to say:

"Unless the owner and the person or persons in charge of the vessel in some way sustain towards each other the relation of principal and agent, the injured party cannot have his remedy against the colliding vessel. *By employing a tug to transport their vessel from one point to another, the owners of the tow do not necessarily constitute the master and crew of the tug their agents in performing the service.* They neither appoint the master of the tug, or ship the crew; nor can they displace either the one or the other. Their contract for the service, even though it was negotiated with the master, is, in legal contemplation, made with the owners of the vessel, and the master of the tug, notwithstanding the contract was negotiated with him, *continues to be the agent of the owners of his own vessel,* and they are responsible for his acts in her navigation. Sproul v. Hemmingway, 14 Pick. 1; 1 Pars. Mar. L. 208. The Brig James Gray v. The John Frazer et al., 21 How. 184."

In the case of The Potomac (D. C.) 147 Fed. 293, Judge Holland held that a captain of a tug was required to know the effect of the tide upon a tow entering a river and other conditions necessary to enable

him to safely tow the vessel in his charge. In the case of The Harry M. Wall (D. C.) 187 Fed. 278, a tugmaster was held responsible where he miscalculated the stage and effect of a tide, which was ebb and created a current strong enough to prevent a steamship from properly making a turn. In the case of The W. G. Mason (D. C.) 131 Fed. 632, Judge Hazel said:

"Where a large steamer, whose master was unacquainted with the harbor at that point, having loaded at a dock in Buffalo, employed two tugs to take her out beyond the inner breakwater through a narrow and crooked channel, the duty rested on the master of the leading or pilot tug to direct the movements of the steamer required for her safe passage, and his failure to seasonably signal her to start her engines forward after swinging her bow around a bend in the channel, by reason of which the current carried her against the side of the channel, where she stranded, was a fault which renders the tug liable for the resulting damages, where the signals given were promptly obeyed by the steamer, which was not required, under the circumstances, to take the initiative, and would not have been justified in so doing."

"Unlike the case of common carriers, damage sustained by the tow does not ordinarily raise a presumption that the tug has been in fault. The contract requires no more than that he who undertakes to tow shall carry out his undertaking with that degree of caution and skill which prudent navigators usually employ in similar services. But there may be cases in which the result is a safe criterion by which to judge of the character of the act which has caused it." The Steamer Webb, 14 Wall. 406, 20 L. Ed. 774.

In the case of The Dorset (D. C.) 250 Fed. 867, affirmed 260 Fed. 32, 171 C. C. A. 68, an ocean-going steamship was backing out of her slip; her movement being facilitated by a tug which kept its bow against the starboard bow of the Dorset. The tugboat master was on the bridge of the Dorset, the ocean-going steamship, directing the movement of that ship out of the slip. While proceeding out a collision occurred with a third vessel. On appeal it was held by the Circuit Court of Appeals for the Fourth Circuit that a steamship under the exclusive control of the master of a tug employed to move her and start her off to sea is not liable for the faults in her navigation which contribute to a collision. In that case the Dorset had employed a towboat company to take charge of turning the ship in the channel and starting her to sea and the towing company used its tug Pocahontas in command of Capt. Mills for that purpose. Mills took entire charge of the steamer and its officers and crew acted under his orders. The Dorset backed out of the slip under her own power and the Pocahontas was used to push her around. When she was about half way out of the dock, a third vessel, the Crisfield, coming down the channel, approached. Notwithstanding an exchange of signals there was a collision. A decree holding the tugs Pocahontas and Crisfield at fault and exonerating the Dorset was affirmed by the Circuit Court of Appeals for the Fourth Circuit. The court said:

"It remains to say that the owners of the Dorset were not liable for the faults in her navigation. She was under the exclusive control of Mills, not as a pilot but as the master of the tug Pocahontas, employed by the agents of the Dorset to take her from the dock and start her to sea, and the tug was actually pushing her in making the maneuver. Under these circumstances the negligence in the navigation of the Dorset was the negligence of the

towing company as an independent contractor. The Eugene F. Moran, 212 U. S. 466, 29 Sup. Ct. 339, 53 L. Ed. 600; Sturgis v. Boyer et al., 24 How. 110, 16 L. Ed. 591; Wilmington Railway Bridge Co. et al v. Franco-Ottoman Shipping Co., 259 Fed. 166, —— C. C. A. ——."

In the instant situation the four tugs had not yet come in contact with the Helen, which was backing out of her slip. They were lying near by waiting for her to get into a position where they could come in contact with her. In all other respects the facts are quite similar to the facts in the Dorset Case.

In the case of The Cromwell (C. C. A. 4) 259 Fed. 166, 170 C. C. A. 234, the vessel was proceeding through a drawbridge under her own steam, a tug being used to help steer her. In attempting to go through the draw an accident occurred. The master of the tug was on the bridge of the steamer in charge of the maneuvers and giving all orders. The captain of the steamer stood by and transmitted the orders received from the master of the tug. A decision holding that the steamer, being under the control of the tugmaster, was not liable for the injury inflicted on the bridge in the collision was affirmed by the Circuit Court of Appeals which said (259 Fed. at page 171, 170 C. C. A. at page 239):

"Even if there was negligence, however, there can be no doubt that it was that of Sanders, the navigator of both vessels. Had the ship employed Sanders as a mere pilot, even under the compulsion of law, it would be liable for his negligence. The China, 7 Wall. 53, 19 L. Ed. 67; De Lima v. Bidwell, 182 U. S. 1, 21 Sup. Ct. 743, 45 L. Ed. 1041. But the evidence of Henry White shows clearly that Sanders was *not a mere pilot* of the Cromwell, but *was the commander of the tug Gladiator*, under the authority of its owners, who had contracted that the tug should tow the Cromwell up the river to the draw where it was to unload. * * * The owners of the tug having thus entered into an independent contract of towing, the tug alone would be responsible for negligence in the undertaking, unless the officers of the Cromwell retained some control of the ship and were guilty of some negligence. It is true her master and crew were on the Cromwell, carrying out the orders of Sanders, but they did nothing more, and in that relation they were mere instrumentalities or means used by Sanders to apply the wheel, engine, and other instruments of navigation— not participants in the navigation. Hence it seems evident that, if the injury to bridge was due to negligence, it was that of the towing company, owner of the tug, as an independent contractor, for which the Cromwell was not responsible. Sturgis v. Boyer et al., 24 How. 110, 16 L. Ed. 591; The Eugene F. Moran, 212 U. S. 466, 29 Sup. Ct. 339, 53 L. Ed. 600" (the underlining is mine).

See, also, the case of The John D. Rockefeller (D. C.) 260 Fed. 982, affirmed by the Circuit Court of Appeals for the Fourth Circuit 272 Fed. 67, certiorari to Supreme Court denied 256 U. S. 693, 41 Sup. Ct. 535, 65 L. Ed. 1175.

The cases which I have just reviewed enunciate in my opinion the principle which should be applied to the present case. Capt. Snyder was not the agent of the owners of the Helen. He was simply an employee of the Holbrook Towing Line, which was an independent contractor.

A decree in favor of the libelants will be entered against the Holbrook Towing Line only.