SOUTH P.R. SUGAR CORPORATION y MAR ANCHA CORPORATION, recurrentes, *v.* COMISIÓN DE SERVICIO PÚBLICO DE PUERTO RICO, recurrida.

*Número:* CE-64-9     *Resuelto:* 4 de enero de 1966

James R. Beverley, Rafael Castro Fernández, Rafael Rodríguez Lebrón y William Estrella, abogados de las recurrentes; J. B. Fernández Badillo, Procurador General, y Américo Serra, Procurador General Auxiliar, abogados de la recurrida; Lydia F. Marcos, abogada de la Junta Azucarera de Puerto Rico, interventora.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

South P.R. Sugar Corporation y Mar Ancha Corporation, en adelante South P.R. y Mar Ancha, impugnaron ante el Tribunal Superior, Sala de San Juan, la resolución dictada por la Comisión de Servicio Público de Puerto Rico en 23 de marzo de 1962 fijándoles tarifas permanentes por un término de cinco años—que expira el 31 de diciembre de 1965 [1]— para los servicios que dichas entidades prestan por recibir, pesar, analizar, almacenar, manejar y embarcar azúcar a granel. El juez de instancia sostuvo en esencia que "No está ahora ante el Tribunal si . . . son compañías de Servicio Público bajo las disposiciones de la Ley de Servicio Público entonces vigente. La cuestión a resolver es si como Compañías de Servicio Público está dentro de las facultades de la Comisión regular el recibo, pesaje, análisis, almacenaje,

[1] No se solicitó la suspensión de los efectos de la orden de fijación de tarifas previa la prestación de fianza, conforme autorizaba el Art. 80 de la anterior Ley de Servicio Público, 27 L.P.R.A. sec. 229, o el Art. 57 de la Ley Núm. 109 de 28 de junio de 1962, 27 L.P.R.A. sec. 1268 (Supl. 1964, pág. 48), que era el vigente al recurrirse al Tribunal Superior. Véanse, Molini v. Soc. Mario Mercado e Hijos, 73 D.P.R. 937 (1952); South P.R. Sugar Co. v. Corte, 62 D.P.R. 841 (1944).

El Art. 73 de la Ley de Servicio Público de 1962, 27 L.P.R.A. sec. 1001 (Nota), dispone que su aprobación no deja sin efecto una autorización concedida al amparo de la ley anterior.

14

manejo y embarque de azúcar a granel," e invocando los Arts. 23 y 24 de la anterior Ley de Servicio Público, 27 L.P.R.A. secs. 71 y 72, resolvió en la afirmativa el problema planteado en esos términos. Un examen de los autos revela que en efecto la cuestión a dilucidarse no era tan sencilla. Básicamente se requería una determinación sobre la condición de compañías de servicio público de las recurrentes. (²)

*Los Hechos.*—South P.R., en adición a la molienda de cañas, se dedica a operar un muelle en Guánica. Como parte de esta operación almacena azúcar a granel que luego es embarcada mediante ciertas facilidades mecánicas por Mar Ancha. En esta actividad ambas entidades manejan azúcar de la Central Guánica, perteneciente a South P.R., de colonos de dicha central y de otras centrales, específicamente Coloso y Eureka. (³) Precisa advertir que en relación con el almacenaje del azúcar de los colonos la tarifa es inoperante por disposición del Art. 7 de la Ley Azucarera, 5 L.P.R.A. sec. 376, y véase, *Central Monserrate, Inc.* v. *Junta Azucarera,* 83 D.P.R. 109 (1961).

En 26 de junio de 1957 la Comisión de Servicio Público requirió a South P.R. para que radicara ante dicho organismo una solicitud para convertir al servicio público un muelle privado que hasta entonces operaba como cesionaria de una franquicia originalmente concedida en 19 de marzo de 1901 a Guánica Land Corporation. En cumplimiento de ello, South P.R. presentó en 9 de septiembre siguiente una solicitud para que "se enmendara la franquicia privada concedida

---

(²) Como el pleito ante el tribunal recurrido se sometió a base de una estipulación de hechos, dispensándose de la presentación del expediente administrativo ante la Comisión de Servicio Público, estamos en condiciones de resolver la cuestión planteada.

(³) En la oposición a la expedición del auto presentada por la Junta Azucarera se hace referencia también a azúcar perteneciente a "compradores independientes," pero no hemos podido verificar tal hecho de la lectura del récord ante nos.

Se insinúa que desde 1962 las recurrentes sólo se dedican al almacenamiento y embarque de azúcar a granel de South P.R. y de sus colonos.

en 1901, para permitir el embarque por dicho muelle de azúcar de terceras personas, o en la alternativa, convertir dicho muelle en uno de servicio público." Posteriormente Mar Ancha intervino en el procedimiento para solicitar que se le permitiera prestar servicios en el embarque de azúcar a granel, aunque hizo la reserva de que no se consideraba una empresa de servicio público. En 13 de octubre de 1961 se fijó una tarifa provisional y en 23 de marzo de 1962 la permanente.

■ La posición de las recurrentes es que el proceso de almacenamiento y embarque de azúcar a granel no está cubierto por la Ley de Servicio Público (a) cuando se realiza "con fines de exportación al exterior," como en el presente caso, porque ello constituye una intervención directa con la reglamentación del comercio interestatal, función que corresponde exclusivamente al Congreso de Estados Unidos o, por delegación de éste, a la Comisión de Comercio Interestatal, y, (b) que aun cuando no constituyere una reglamentación inválida del comercio interestatal, el mismo no es un servicio público sujeto a la reglamentación de la Comisión, porque la ley creadora de dicho organismo "no contempla dicha situación ni la autoriza."

■ 1. En apoyo del primer fundamento de impugnación se aduce que el proceso de embarque de carga en vapores está comprendido dentro del término de porteadores públicos dedicados al tráfico marítimo, y como tal, constituye comercio interestatal que no puede ser reglamentado por el Estado Libre Asociado de Puerto Rico. Aunque se trataba del ejercicio del poder de imponer contribuciones—consustancial a la soberanía—en *R.C.A.* v. *Gobierno de la Capital,* 91 D.P.R. 416 (1964), dispusimos de un planteamiento similar al sostener la validez de una patente municipal impuesta sobre el volumen de negocios de una empresa de comunicaciones dedicada al comercio interestatal e internacional. Dijimos entonces:

" . . . Es otro hecho histórico que la disposición constitucional que reserva al Congreso el poder de reglamentar el comercio con naciones extranjeras, entre los Estados y con las tribus indias, *no sólo no ha regido ni rige por su propia fuerza en Puerto Rico sino que por el contrario, el Congreso dispuso de manera expresa que no serían aplicables a Puerto Rico la Ley sobre Comercio Interestatal y las varias enmiendas hechas o que se hicieran a ella* . . . ni tampoco una Ley para regular el comercio, de 4 de febrero de 1887 y las leyes enmendatorias de la misma, según el Art. 38 de la Carta Orgánica de 1917—39 Stat. 964—y que aún prevalece formando parte de la Ley de Relaciones Federales. Finalmente, es un hecho histórico que por disposición expresa del Congreso desde un principio las leyes de rentas internas de los Estados Unidos no tuvieron ni tienen fuerza o validez en Puerto Rico. Sec. 14 Ley Foraker, 31 Stat. 80; Art. 9, Ley de Relaciones Federales—39 Stat. 954.

"Por supuesto, en el pasado ha habido, como la hay en el presente, relación de comercio interestatal entre Puerto Rico y los Estados Unidos, pero esa relación rigió por disposiciones expresas del Congreso en uso de su autoridad bajo el inciso 2 de la Sección 3 del Art. IV de la Constitución Federal, y al presente a tenor de la Ley 600. Esta relación de comercio interestatal constitucionalmente ha tenido y aún tiene perfiles distintos de la que por virtud de la Constitución rige entre los Estados Unidos de la Unión. De ahí que aun bajo los regímenes anteriores, Puerto Rico pudo ejercer la facultad de tributación y el Estado Libre Asociado puede ejercer hoy ese poder en cuanto al comercio interestatal se refiere, en forma que tal vez a un Estado cubierto por las disposiciones de la Constitución Federal, no le sería permisible." (Bastardillas Nuestras.)

Véanse, además, *Mora* v. *Mejías*, 206 F.2d 377 (1st Cir. 1953) y *Buscaglia* v. *Ballester*, 162 F.2d 805 (1st Cir. 1947).

█ Por otro lado, aun presumiendo que la cláusula sobre el comercio interestatal fuere aplicable en la misma forma que a los estados federales, las recurrentes han omitido demostrar que la actuación de una agencia del Estado Libre constituye una carga irrazonable, discriminatoria u onerosa sobre el comercio interestatal o en conflicto con el interés

federal. *General Motors Corp.* v. *Washington*, 377 U.S. 436 (1964), *Cities Service Co.* v. *Peerless Co.*, 340 U.S. 179 (1950), y casos allí citados. El motivo para la ausencia de quejas sobre este particular es aparente: la Comisión fijó la tarifa considerando un rédito de un ocho por ciento sobre la inversión neta de las corporaciones recurrentes.

■ 2. En cuanto al segundo fundamento un examen de la anterior Ley de Servicio Público señala que no puede prosperar. El Art. 2, 27 L.P.R.A. sec. 2, dispone que "Son compañías de servicio público. . . las personas naturales o jurídicas que se dediquen en Puerto Rico a cualesquiera de los fines o negocios siguientes: . . . (c) *Muelles de todas clases y astilleros. (d) Almacenamiento público.*" Añade: "La frase 'almacenamiento público' . . . incluye cualquiera y todo servicio mediante pago relacionado con el recibo, *transporte . . . almacenamiento, manejo, conducción, y depósito* de toda clase de mercaderías, mercancías, bienes, propiedad, equipaje o cargas."(⁴) (Bastardillas nuestras.) Claramente estas disposiciones son lo suficientemente amplias para incluir las actividades que realizan las recurrentes en relación con el azúcar de otras centrales, con exclusión de la de South P.R. y sus colonos.

---

(⁴) La nueva Ley de Servicio Público contiene provisiones similares en el inciso (c) del Art. 2, 27 L.P.R.A. sec. 1002 (Supl. 1964, pág. 9):

"(a) 'Compañía de servicio público' incluye todo . . . *operador de muelle, almacenista* . . . que se *ofrecen a prestar o prestan* sus servicios . . . mediante paga, al público en general, o a una parte del mismo, en Puerto Rico."

Los incisos (z) y (aa) del citado artículo definen:

"(z) 'Operador de muelle' incluye toda persona que fuere dueña, controlare, explotare o administrare cualquier dique, muelle, embarcadero o estructura usada por embarcaciones en relación con o para facilitar el recibo o salida de pasajeros y la carga o descarga de bienes.

"(aa) 'Almacenista' incluye toda persona, excepto los operadores de muelles, que fuere dueña, controlare, o explotare o administrare, como compañía de servicio público, cualquier almacén, edificio o estructura en que se almacenen bienes en relación con, o para facilitar el transporte de bienes por porteadores públicos o por contrato, o se almacenen bienes por el público en general." (Bastardillas nuestras.)

Se arguye, sin embargo, que la intención fue incluir únicamente a aquellas empresas que exclusivamente se dedican al almacenamiento como negocio público, y no a la South P.R. que lo lleva a cabo como una gestión incidental a su negocio principal de molienda de cañas y elaboración de azúcar. No podemos convenir con esta interpretación restrictiva de la ley. Es cierto que en el Reglamento sobre Almacenamiento Público aprobado por la Comisión en 20 de abril de 1948, 27 R.&R.P.R. secs. 72–1 a 72–25, se refiere a los almacenes que se dedican como actividad principal a recibir mercancía o propiedad del público en general, pero ello necesariamente no significa que otras actividades más limitadas de almacenamiento no estén sujetas a la supervisión de la Comisión. Esto es especialmente cierto si se considera que el método de almacenar y embarcar el azúcar a granel hizo su aparición en nuestro medio económico con posterioridad a 1948.

Si ello no fuere suficiente, la actividad de servicio en el almacenamiento  y embarque de azúcar a granel de otras centrales estaría cubierta por la disposición general del Art. 2(j), 27 L.P.R.A. sec. 2, al efecto de que se considerarán compañías de servicio público "cualesquiera otras que se dediquen a negociar a fines de naturaleza análoga a las enumeradas anteriormente." Véase, *South P.R. Sugar Corp.* v. *Junta Azucarera*, 88 D.P.R. 43 (1963).

Finalmente, es significativo que en un recurso anterior —impugnación de una resolución de la Junta Azucarera sobre la determinación de los gastos de embarque y mercadeo de azúcar a los fines de las liquidaciones a los colonos— estas mismas corporaciones afiliadas aceptaran que al embarcar azúcar  ajena eran compañías de servicio público. Se dice en *South P.R. Sugar Corp.* v. *Junta Azucarera*, supra, "Entonces consideraban el azúcar que embarcaba Mar Ancha como si fuera su propia azúcar puesto que de dedicarse a

embarcar azúcar ajena no hubieran tenido duda alguna de que actuaba como empresa de servicio público." (⁵)

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 21 de febrero de 1964.*

_____

(⁵) Véase, además, *South P.R. Sugar Corporation* v. *Junta Azucarera de P.R.,* JA-65-2.