PUERTO RICO LIGHTERAGE CO. y PORT SAN JUAN TOWING Co., querellados, recurrente la segunda y aquí peticionaria, *v.* CARIBE TUGBOAT CORPORATION, interventora; AUTORIDAD DE LAS NAVIERAS DE PUERTO RICO, ETC., querellantes recurridas.

*Número:* O-80-399      *Resuelto:* 3 de noviembre de 1981

*Saldaña & López-Baralt,* abogados de los peticionarios; *Cancio, Cuevas & Mayo* y *Fernando A. Delgado,* abogados de las interventoras Autoridad de Navieras de Puerto Rico y Transamerican Trailer Transport, Inc.; la interventora-recurrida Caribe Tugboat Corporation no compareció.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Transamerican Trailer Transport solicitó de la Comisión de Servicio Público que interviniera para corregir y reglamentar alegadas tarifas irrazonables y arbitrarias que cobraban la Puerto Rico Lighterage Co. y la Port San Juan Towing Company (hoy McAllister Brothers, Inc.), por servicios de remolque que estas compañías venían prestando en el área portuaria de San Juan.[1] La Comisión decidió investigar. Los querellados atacaron la jurisdicción de la Comisión. Alegaron que la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1001 *et seq.*, no autoriza la reglamentación de este tipo de actividad. En la alternativa, de reglamentarla, confligiría con la jurisdicción del Congreso de los Estados Unidos en áreas marítimas, por estar ocupado el campo (*preempted*).

La Comisión sostuvo que tenía jurisdicción para reglamentar lo concerniente a tarifas por los servicios de remolque que cobraban las compañías querelladas, por ser éstas porteadores públicos dedicados al transporte de bienes por agua.[2]

Una de las querelladas solicitó la reconsideración de la resolución y una oportunidad de presentar prueba adicional. La Comisión ordenó entonces la celebración de una nueva vista. Permitió la intervención de otra compañía de remolque.

Posteriormente la Comisión declaró sin lugar la moción de reconsideración. Los querellados recurrieron al Tribu-

---

[1] El uso de servicio de remolques en el puerto de San Juan es obligatorio para ciertas embarcaciones, conforme a 23 R.&.R.P.R. sec. 336–201, que ordena lo siguiente:

"Todo operador de cualquier barco de carga o pasajeros de 8,000 toneladas o más de desplazamiento deberá hacer uso de remolcadores para las maniobras de atraque o desatraque de dicho barco dentro del Puerto de San Juan. Las disposiciones de esta sección no aplicarán a barcos equipados con hélices laterales o a proa (*bow or side-thrusters*)."

[2] La Comisión en su resolución y orden de 25 de junio de 1976 se limitó en términos generales a ordenar a los querellados radicar las tarifas que cobran y las normas que pactan a seguir con los usuarios de estos servicios de remolque. La Comisión se reservó para un futuro el fijar las tarifas a cobrar.

nal Superior en solicitud de revisión. El Tribunal Superior denegó el recurso. Acordamos revisar.

■ El propósito que anima la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1001 *et seq.*, es reglamentar los costos y servicios de empresas que el legislador ha señalado como "Compañía de servicio público", y cuya definición ". . . incluye todo porteador público, empresa de conducción por tuberías, empresas de gas, empresa de energía eléctrica, empresa de teléfonos, empresa de telégrafos, empresa de dique para carenar, agencias de pasajes, corredor de transporte, operador de muelle, almacenista, empresa de puentes de pontazgo, empresa de fuerza nuclear, empresa de antena comunal de televisión y empresa de mudanzas que se ofrecen a prestar o prestan sus servicios u ofrecen a entregar o entregan productos, mediante paga, al público en general, o a una parte del mismo, en Puerto Rico. No incluye a personas que prestan el servicio para su uso exclusivo o de sus inquilinos".

■ De acuerdo con los incisos (d) e (i) de la Sec. 1002 de la ley, son porteadores públicos, entre otras, aquellas empresas de transporte de bienes por agua. De ahí la Comisión concluyó, basándose en una definición de diccionario, que los barcos remolcados por las querelladas son "bienes" y, por tanto, están incluidos dentro del ámbito de aplicación de la ley.

No hay controversia en cuanto a que las querelladas son las únicas dos empresas en Puerto Rico que se dedican a prestar servicio de remolcadores en la zona portuaria de San Juan. Las actividades y operaciones de ambas empresas, excepto las tarifas a cobrar, están reglamentadas por varias agencias federales. Así, por ejemplo, la Guardia Costanera de Estados Unidos tiene poder de reglamentación en lo concerniente a la tripulación, mantenimiento, inspección, certificación y licencias de los remolcadores.

Los remolcadores de las querelladas no transportan pasajeros ni tienen espacio disponible para carga. Su fun-

ción estriba primordialmente en proveer fuerza adicional o auxiliar a otras embarcaciones que, aunque poseen fuerza motriz propia, necesitan de aquélla para realizar con seguridad las maniobras de atracar y desatracar del puerto. Las peticionarias tampoco ofrecen servicio de alijo o gabarraje (*lighterage*). Dicho servicio consiste en transportar carga desde el puerto hacia un barco o viceversa por medio de lanchones sin fuerza automotriz halados por remolcadores. Procede determinar si la actividad a que se dedica la peticionaria la convierte en un porteador público.

Las actividades en que generalmente puede participar un remolque son dos: (1) halar a una embarcación sin fuerza motriz propia y (2) suplir fuerza motriz adicional a una embarcación con fuerza propia para facilitar la gestión de atracar y desatracar. Resulta determinante establecer la diferencia entre estos dos tipos de gestiones, pues es decisiva para clasificar la actividad.

En Estados Unidos se ha reconocido tradicionalmente que la actividad de remolcar barcos no constituye transportación y que las empresas dedicadas a prestar servicios ordinarios de remolque no son porteadores públicos. Para que puedan ser consideradas como porteadores públicos, el servicio que presten las empresas debe ser el de remolcar carga inmóvil.

En su opinión concurrente en *Bisso* v. *Island Waterways Corp.*, 349 U.S. 85, 96 (1955), el Juez Douglas aludió a esta distinción del siguiente modo:

> En el caso de *Sun Oil* [287 U.S. 291 (1932)] el remolcador no era un porteador público o por contrato. Tan solo estaba prestando ayuda a una embarcación que se movía por sus propios medios. Aquí se trata de remolques inmóviles, donde el remolcador y solamente el remolcador tiene control, donde los remolques no tienen energía ni tripulación.
>
> En esa situación, los remolcadores son porteadores públicos . . . cuando realizan toda la labor.

En *Stimson Lumb'r. Co.* v. *Kuykendall*, 275 U.S. 207,

211 (1927), se sostuvo que la actividad de remolcar troncos de árboles por un río convertía a los remolcadores en porteadores públicos, pues "[e]n todos los detalles esenciales, ese servicio es igual al de transporte de carga en una embarcación". *Cf. Cornell Steamboat Co.* v. *United States,* 321 U.S. 634 (1944).

La segunda variante de la actividad de remolque se suscitó en *Sun Oil Co.* v. *Dalzell Towing Co.,* 287 U.S. 291, 293-294 (1932), donde el Tribunal expresó:

> No se demostró que el demandado tendría o que en algún momento tuviera control del buque cisterna o que acordara o se comprometiera a hacer más que proporcionar remolcadores para ayudar al buque *mientras éste utilizaba su propia fuerza motriz.* Su capitán, sus oficiales y su tripulación se encontraban en sus puestos de servicio, y su fuerza motriz y el mecanismo de gobierno de la nave se utilizaron para llevarla a su destino.
>
> En lo que concierne al servicio que se ofrecería según el acuerdo, el demandado *no era un porteador público* o un depositario, ni se había comprometido a prestar servicio ni estaba obligado a ello. Para remolcar no se exige un depósito, y los servicios cubiertos por el contrato incluían menos que remolcar. (Énfasis suplido.)

En igual sentido se resolvió *The M'Caldin Brothers,* 213 F. 211, 212 (1914).

Más aún, *Hermann, Briggs & Co.* v. *Western Marine & Fire Ins. Co.,* 13 La. 516, 523 (1839), estableció una distinción más tajante:

> El negocio de remolcar barcos está completamente *separado* y es completamente *distinto* de todo aquello que tiene que ver con o es incidental a la navegación de los buques de vapor por el río, o del transporte de carga y pasajeros. (Énfasis suplido.)

La distinción del Tribunal Supremo de Estados Unidos en *Stevens* v. *The White City,* 285 U.S. 195, 200 (1932), es sumamente persuasiva.

El remolcador no tiene control exclusivo sobre el re-

molque; sólo es necesario para que el remolcador y los que están a su cargo puedan cumplir con su obligación. Ellos no tienen control como los porteadores públicos y los depositarios. No tienen más autoridad sobre el capitán o sobre los tripulantes de la embarcación remolcada que la necesaria para gobernar el movimiento de la flotilla. En todo concepto y para todos los demás propósitos, la embarcación que se remolca, su carga y tripulación permanecen bajo la autoridad de su capitán; y, en caso de apuro, a él le toca determinar lo que deberá hacerse por la seguridad de su embarcación y la carga que lleva. En casos como éste, el derecho de decidir pertenece al capitán del remolque y no al capitán del remolcador. Un contrato para remolcar solamente, no requiere ni contempla la misma transferencia que de ordinario se considera esencial al depósito.

No podemos interpretar la actividad de remolque de una embarcación de carga con fuerza motriz propia como una de transporte de carga. El transporte lo lleva a cabo la embarcación principal que goza de fuerza motriz propia, y no el remolcador, que sólo suple la fuerza motriz auxiliar requerida para atracar o desatracar seguramente del muelle. Ciertamente hay una diferencia entre una embarcación que remolca de un destino a otro una barcaza cargada y una embarcación capitaneada por un experto (práctico) que ayuda a atracar o desatracar un buque luego de realizar la travesía.

▆▆▆ Una lectura de la ley demuestra que la Asamblea Legislativa no se pronunció a favor de incluir la gestión de remolque que plantea este caso como una actividad de servicio público sujeto a la jurisdicción de la Comisión; tanto ésta como la Rama Judicial están en la obligación de seguir ese dictamen. Ni la Comisión ni los tribunales pueden añadir tipos de empresa a las que define la Asamblea Legislativa como de servicio público. *State* v. *Carolina Telepone and Telegraph Co.*, 148 S.E.2d 100, 109 (N.C. 1966). La Comisión de Servicio Público de Puerto

Rico no puede asumir jurisdicción sobre clase alguna de actividad que no esté claramente autorizada por ley para ello. En el presente caso la Comisión ha asumido jurisdicción sobre las tarifas que cobran las empresas de remolque en el puerto de San Juan, sin estar claramente autorizada para ello.

*Se revocará la sentencia recurrida.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García se inhibieron. El Juez Asociado Señor Díaz Cruz disintió en opinión separada.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

A solicitud de Transamerican Trailer Transport en que se querella de las tarifas irrazonables y arbitrarias de dos compañías que controlan el servicio de remolque en el Puerto de San Juan, la Comisión de Servicio Público abrió una investigación. Las querelladas Port San Juan Towing Co. y Caribe Tugboat Corp. impugnaron la jurisdicción de la Comisión sobre la base de no hallarse la actividad de remolque comprendida entre los porteadores públicos sujetos a reglamentación en la Ley de Servicio Público de Puerto Rico. 27 L.P.R.A. sec. 1001 y ss. La Comisión desestimó dicha moción declinatoria y por resolución de 25 junio, 1976 ordenó a Port San Juan Towing que cumpla los requisitos para obtener autorización para operar el servicio de remolcadores y dispuso que una vez recibida la información, y de ser necesario, iniciaría un procedimiento para fijación de tarifas. Denegada la reconsideración, Port San Juan Towing acudió en revisión a la Sala de San Juan del Tribunal Superior que en 9 junio, 1980 dictó sentencia en la que resuelve que la legislación federal de cabotaje (Shipping Act de 1916—46 U.S.C.A. 801 párrafo 2 y ss.) no ocupa el campo ni desplaza la legislación de Puerto Rico según *A.P.St. Phillip, Inc.* v. *Atlantic Land & Improvement Co.,* 13 Federal Maritime Com. Reports 166

(1969); y que la Comisión tiene jurisdicción. Al recurso de San Juan Towing Co. expedimos *certiorari* el 9 octubre, 1980 y ahora resolvemos.

La peticionaria describe el servicio de remolque mediante paga y al público en general que tanto ella como la Caribe Tugboat ofrecen con exclusividad en el Puerto de San Juan, como operación consistente en suplir fuerza motriz adicional a un barco para *guiarlo* y asistirlo a llevar a cabo con seguridad las maniobras de atraque y desatraque en los muelles del puerto. Según la terminología explicada en la Parte III de nuestra Ley de Servicio Público, 27 L.P.R.A. sec. 1002, la pre-descrita actividad constituye *transportación*, y quien la realiza es un "porteador público" cuya figura incluye una *empresa de transporte por agua* (sec. 1002(d)(5)) y de ésta dice en el inciso (i) que incluye "toda persona que en su carácter de porteador público fuere dueña, controlare, explotare o administrare cualquier clase de embarcación que se utilice para el transporte de pasajeros o *bienes por agua* entre puntos en Puerto Rico" (énfasis suplido); definiéndose finalmente en el inciso (*o*) la actividad "transporte de bienes" como "todo servicio relacionado con el transporte de bienes o carga, incluyendo su . . . desvío, conducción. . .". Esta terminología coincide con la Parte III de la Ley de Comercio Interestatal que en *Cornell Steamboat Co.* v. *United States*, 321 U.S. 634, 636 (¹) (1944), fue interpretada como aplicable a

---

(¹) Transportation Act (49 U.S.C.A., sec. 902). En la parte que destaca la similaridad entre estatutos, dice el Tribunal Supremo de E.E. U.U.:

"*First.* Cornell argues that its towboats are not 'water carriers' within the meaning of Part III of the Act. Looking at Part III, we find that, read together, §§ 302(c), (d) and (e) define a 'water carrier' as any person who engages in the 'transportation by water . . . of . . . property . . . for compensation.' Section 302(h) defines 'transportation' as including 'all services in or in connection with transportation,' as well as 'the use of any transportation facility'. Any 'vessel,' which means any 'watercraft,' § 302(f), is such a facility. § 302(g). Congress has thus carefully and explicitly set out the conditions which in combination describe the kinds of carriers it intended to subject to regulation. Cornell's tugboats fall squarely within the description."

un servicio de remolcadores mediante paga dentro de y alrededor del Puerto de New York.

En su Art. 14 (27 L.P.R.A. sec. 1101) declara la Ley de Servicio Público de Puerto Rico que "[e]n el ejercicio de sus facultades de reglamentación la Comisión velará por el interés público, de manera que bajo tarifas justas y razonables se presten servicios públicos seguros, cómodos y eficientes. . .". En 1974[2] dicho Art. 14 fue ampliado para extender los poderes y facultades de la Comisión a toda persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público; a toda persona o entidad que lleve a cabo cualquier actividad para la cual sea necesaria obtener una autorización o endoso de la Comisión; y también a aquellas cuyas actuaciones u omisiones resulten en perjuicio de las actividades, recursos o interés en relación con los cuales la Comisión tiene poderes de reglamentación, supervisión o vigilancia. Los poderes y facultades de la Comisión de Servicio Público como órgano del Gobierno de Puerto Rico, en materia de puertos, derivan de los estatutos fundamentales del E.L.A.: el Art. 7 de la Ley de Relaciones Federales declara que todas las orillas de los puertos, muelles, y embarcaderos quedan bajo el dominio del Gobierno de Puerto Rico, para ser administrados a beneficio del Pueblo de Puerto Rico; y el siguiente Art. 8 ordena que "La superficie de los puertos y los cursos y extensiones de aguas navegables y los terrenos sumergidos bajo ellos dentro y alrededor de la Isla de Puerto Rico y de las islas y aguas adyacentes que ahora pertenecen a los Estados Unidos y no han sido reservados por los Estados Unidos para fines públicos, quedan por la presente colocados bajo el dominio del Gobierno de Puerto Rico". Correlativamente dispone el Art. VI Sec. 13 de nuestra Constitución de 1952: "[Franquicias, derechos, privilegios y concesiones] El procedimiento para otorgar

---

[2] Ley Núm. 104 de 27 junio, 1974 pág. 371.

franquicias, derechos, privilegios y concesiones de carácter público o cuasi público será determinado por ley, pero toda concesión de esta índole a una persona o entidad privada deberá ser aprobada por el Gobernador o por el funcionario ejecutivo en quien él delegue. Toda franquicia, derecho, privilegio o concesión de carácter público o cuasi público estará sujeta a enmienda, alteración o revocación según se determine por ley."

Consistente con esta básica encomienda de administración de puertos, tanto en la superficie como en los terrenos sumergidos bajo ellos; y de muelles y embarcaderos, para beneficio del Pueblo de Puerto Rico se aprobó por la Asamblea Legislativa la Ley de Servicio Público de Puerto Rico (Núm. 109 de 28 junio, 1962, enmendada —27 L.P.R.A. sec. 1001 y ss.), que en su Art. 73 instruyó: "Las disposiciones de esta ley deben ser interpretadas en el sentido de permitir a la Comisión el uso amplio de sus poderes mediante la formulación de normas que puedan enfrentarse a condiciones cambiantes y hacer mejor uso de la experiencia adquirida siempre que ello sea en beneficio del interés público."

Aquí tenemos a dos compañías que monopolizan el servicio de remolcadores en el Puerto de San Juan, dictan las tarifas e imponen ellas solas todas las condiciones económicas de la operación, en grave perjuicio del Pueblo, tratando de imponer su derecho de propiedad[3] contra todo interés público y en abierta contravención de las citadas disposiciones del Congreso de los Estados Unidos, de la Constitución de Puerto Rico y de nuestra Asamblea Legislativa. Como se dijo en *Cornell*, ante, de dispensar el método particular de transporte de Port San Juan Towing y Caribe Tugboat de toda reglamentación, en un país donde existe una política pública definida y un plan ge-

---

[3] Las cortes sí están prestas a sostener los derechos de propiedad privada, pero jamás al precio de abandonar la protección del público en general del uso de la propiedad privada, cuantas veces parezca afectar el interés público. *State v. Kuykendall*, 243 P. 834 (1926).

neral para la regulación de porteadores, se frustraría el propósito tanto del Congreso como de la Asamblea Legislativa, resultando en una excepción anómala. *Cornell*, supra, pág. 637.

Frente a principios tan preciados, y con un texto tan claro en nuestro estatuto, no parece que haya necesidad de interpretación mediante recurso a otras fuentes ajenas a su propio lenguaje. Aparte de ostentar las características de empresa de transporte de bienes por agua señaladas en el Art. 2 (27 L.P.R.A. sec. 1002), estas compañías de remolcadores son en esencia, y por la naturaleza de su empresa, un porteador público desde el momento en que se presentan como dedicadas a un negocio de transportación de propiedad ajena, mediante paga, ofreciendo sus servicios al público en general. *Stimson Lumb'r Co.* v. *Kuykendall*, 257 U.S. 207 (1927). "[S]i un barco de carga que despega del mismo muelle transportando mercancía mediante paga según tarifa, a determinados puertos de ruta, es un porteador público, no vemos razón para que un remolcador, que despega del mismo muelle, que lleva en remolque toda clase de propiedad por paga estipulada en tarifa . . . dentro una zona determinada, no sea también un porteador público. . . ." *State* v. *Kuykendall*, 243 P. 834, 838 (1926).

La distinción que propone la recurrente entre remolque de carga inmóvil, sin fuerza motriz propia; y el remolcador que auxilia con fuerza motriz adicional una embarcación que la tiene propia, para facilitar las operaciones de atraco y despegue, carece de validez en Puerto Rico en vista de que nuestro estatuto no incorpora esos elementos de peso muerto y nave con movilidad propia. Por el contrario, su terminología es específica en cuanto a incluir en su reglamentación cualquier clase de embarcación que se utilice para el transporte de bienes por agua, comprendido en el concepto "transporte de bienes" todo servicio de *desvío y conducción*, que es precisamente la función del

remolcador: desvía y conduce el barco por los accesos más seguros hacia y desde el muelle. (27 L.P.R.A. sec. 1002(j) y (p)). Reiteramos que es nuestro estatuto lo que este Tribunal ha de interpretar. Con incuestionable poder para reglamentar el negocio de la recurrente, la Asamblea Legislativa de Puerto Rico ha dado su propia definición de las actividades de Port San Juan Towing y Caribe Tugboat, en lenguaje que literalmente las incluye. A esa operación así definida hemos de atenernos, sin que vengan al caso elementos o circunstancias descriptivas que el legislador dejó fuera de su definición. *Cornell*, supra, pág. 637. Por la misma razón hay que rechazar el argumento de que el remolcador no es porteador porque la tripulación mantiene el control del barco; no vemos diferencia entre desviar y conducir un barco con o sin el mando de su capitán. Aunque éste retenga el mando, siempre necesitará el remolcador para maniobrar en el puerto. La opinión concurrente en *Bisso* v. *Inland Waterways Corp.* 349 U.S. 85, 96 (1955), y la del Tribunal en *Sun Oil Co.* v. *Dalzell Towing Co.*, 287 U.S. 291 (1932), en que descansa la opinión de mayoría, no tienen como razón de decidir la naturaleza del remolcador como porteador; son casos de daños y perjuicios en que se fija la responsabilidad entre el remolcador y el remolque.

Esta actividad de remolque en el Puerto de San Juan no está reglamentada por el Gobierno Federal en cuanto a tarifas. Mas aun cuando las tarifas de Puerto Rico tengan algún impacto en el comercio interestatal, queda a salvo la facultad para imponerlas siempre que no sean confiscatorias, discriminatorias o irrazonables en detrimento de dicho tráfico. *South P.R. Sugar Corp.* v. *Com. Servicio Pub.*, 93 D.P.R. 12, 16–17 (1966); *Cities Service Co.* v. *Peerless Oil Gas Co.*, 340 U.S. 179 (1950).

Con estos antecedentes y fundamentos, anularía el auto expedido y devolvería el caso a la Comisión para continuación de procedimientos compatibles.