# 2009 DTA 74

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**

PEPE ABAD AUTO, INC.
Demandante-Apelante

v.

HON. JUAN CARLOS MÉNDEZ, SECRETARIO DE HACIENDA,
ESTADO LIBRE ASOCIADO DE PUERTO RICO
Demandados-Apelados

Núm. KLAN-2008-01289

San Juan, Puerto Rico, a 30 de abril de 2009

Panel integrado por su Presidenta, la Juez García García,
la Juez Varona Méndez y el Juez Cabán García

García García, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos Pepe Abad Auto, Inc. (en adelante el apelante) para solicitarnos la revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante TPI), el 10 de

abril de 2008. Mediante ésta, se denegó la solicitud de *injunction* presentada por el apelante. Dentro del término establecido en ley, el apelante radicó moción de reconsideración, la cual también fue denegada por el foro de instancia.

## I

La parte apelante presentó demanda ante el TPI en contra del Departamento de Hacienda (en adelante Hacienda). En síntesis, alegó que Hacienda cobra ilegalmente arbitrios por vehículos de motor vendidos a precios mayores que el precio sugerido y que, además, impide el registro de ciertos vehículos en el Departamento de Transportación y Obras Públicas.

Por otro lado, el Secretario de Hacienda alegó ante el TPI que Hacienda promulgó cierta reglamentación con el fin de regular el pago de arbitrios sobre los vehículos de motor, de forma que el proceso quedara armonizado con el Código de Rentas Internas de Puerto Rico, Ley Núm. 120 del 31 de octubre de 1994, según enmendada (en adelante CRI).

Durante el proceso llevado a cabo ante el TPI, las partes acordaron someter el caso para adjudicación mediante estipulaciones de hechos y sendos memorandos de derecho, por lo que dicho foro adoptó las determinaciones de hechos mencionadas en la sentencia apelada. A continuación esbozamos las determinaciones de hechos relevantes para la resolución de esta controversia.

El apelante es un concesionario (*dealer*) independiente de vehículos de motor que se dedica a la venta de vehículos nuevos marca Toyota. Adquiere los vehículos del distribuidor Toyota de Puerto Rico (en adelante TPR). La manera en que funciona el pago de arbitrios sobre vehículos de motor es que, al momento de la introducción de los vehículos a Puerto Rico, TPR paga arbitrios sobre estos vehículos a base del precio sugerido de venta al consumidor, conforme lo establece la Sección 2014 del CRI. En el caso de autos, TPR determinó el precio sugerido de venta para estos vehículos. Cabe mencionar que el precio de venta final de los vehículos de motor, puede ser igual, mayor o menor al precio de venta sugerido.

Hacienda no intervino con la determinación de precio sugerido declarado por TPR. Asimismo, determinó que el precio sugerido de venta al consumidor informado por TPR, no refleja razonablemente el precio sugerido de venta expuesto en modelos similares al momento de la introducción de los vehículos en Puerto Rico. Al momento de asignar los precios sugeridos, TPR no tiene conocimiento del precio al cual la unidad vehicular finalmente es vendida al consumidor. En cuanto a los vehículos del caso de autos, TPR no acordó con el apelante cuál sería el precio final de venta de los vehículos para el consumidor.

Como parte del curso ordinario de sus negocios, el apelante tiene la obligación de informar a Hacienda sobre el precio al que finalmente vende los vehículos. Esta información no se le provee a TPR, tampoco se le solicita a dicha entidad la expedición de una nueva etiqueta con el precio final de venta al consumidor, ni se le remite cantidad de dinero alguna por concepto de arbitrios. El apelante no radica declaración alguna de arbitrios en Hacienda. Su responsabilidad es informar el precio de venta.

Por su parte, Hacienda creó un sistema computadorizado para regular el pago de los arbitrios. Éste controla los procesos de introducción, imposición, pago, levante y la emisión de las certificaciones de pago de arbitrios o exoneración concedida y la etiqueta indicativa del precio sugerido de venta al consumidor. Al momento de la declaración y pago por el importador, en este caso TPR, el sistema emite un documento titulado *"Certificación de Pago de Arbitrios"* (en adelante CPA), el cual certifica que el importador declaró el vehículo y que pagó los arbitrios declarados. El derecho vigente exige que el Departamento de Transportación y Obras Públicas requiera a quienes deseen inscribir un vehículo de motor que muestren una CPA expedida por Hacienda.

Previo a la aprobación del Boletín 02-01, en noviembre de 2002, el sistema de Hacienda expedía las CPAs al momento de la declaración y pago de los arbitrios por el consignatario, sin limitación alguna a la inscripción en el Departamento de Transportación y Obras.Públicas. Con la aprobación de este Boletín, Hacienda modificó el sistema y comenzó a emitir las CPAs al momento de la declaración y pago de los arbitrios por el consignatario, la cual leía *"no es válida para registrar el vehículo en el Departamento de Transportación y Obras Públicas"*. Desde entonces, el apelante ha satisfecho el pago de las deudas producto del re-cómputo de arbitrios con relación a algunos de los vehículos vendidos por encima del precio sugerido de venta declarado por el importador.

En el caso de los vehículos sobre los cuales el apelante satisfizo el pago de las deudas producto del re-cómputo de arbitrios, Hacienda ha expedido nuevas CPAs sin la leyenda limitativa que ha permitido la inscripción de los vehículos en el registro del Departamento de Transportación y Obras Públicas. El nuevo sistema establecido por Hacienda tiene la capacidad de que al momento en que el apelante declara la venta del vehículo, reconoce inmediatamente cualquier diferencia entre el precio sugerido, según declarado por el importador TPR y el precio final de venta al consumidor. Sin embargo, en caso de que el sistema registre que el precio sugerido de venta al consumidor declarado por TPR es mayor al precio de venta final al consumidor informado por el apelante, el sistema no emite declaración de arbitrios recalculando el arbitrio.

En los casos en que el apelante vende un vehículo por un precio mayor al sugerido, el sistema de Hacienda emite declaraciones de arbitrios recalculando los arbitrios a nombre de TPR como consignatario. Sin embargo, al pie de dicha declaración existe una nota que lee: *"Esta declaración es producto de una venta por encima del precio sugerido de venta al consumidor"*.

Las deudas producto del re-cómputo se registrarán en Hacienda. En los casos en que el sistema de Hacienda detecta que el precio sugerido por TPR es menor al precio de venta al consumidor, Hacienda no elimina de la CPA la frase limitativa para la posterior inscripción, hasta tanto se paguen los arbitrios re-computados.

La demanda presentada por el apelante consiste en una solicitud de *injunction* al amparo de la Sección 6002 (a)(10) del CRI. Por medio de su demanda, solicitó que se ordenara al Secretario de Hacienda a cesar y desistir del cobro de arbitrios, tasados ilegalmente, en contra de un *dealer* sobre el que, por ley, no recae la obligación por estas contribuciones. A raíz del modo en que opera Hacienda para el cobro de arbitrios sobre vehículos de motor, el apelante solicitó al TPI que expidiera una orden de *injunction* al Secretario de Hacienda para que cesara y desistiera de realizar los cobros ilegales de arbitrios, que se ordenara la eliminación de los arbitrios ilegalmente tasados de su certificación de deuda y que deje de impedir el proceso de registro de los vehículos vendidos por éste.

Acaecidos varios trámites procesales, en abril de 2008, el TPI dictó la sentencia apelada, en la cual denegó la solicitud de *injunction* de la parte demandante. En dicha sentencia, el TPI concluyó que la base utilizada por el Secretario de Hacienda para cobrar arbitrios adicionales era válida. Se fundamentó en que la Ley contempla que se cobren arbitrios a base del precio final de venta y en que el Secretario de Hacienda tiene la potestad de disponer que la inscripción del vehículo quede supeditada a que se acredite el pago de los arbitrios adicionales impuestos por la diferencia entre el precio sugerido de venta declarado por el importador y el precio final de venta al que un concesionario vende un vehículo a un consumidor.

Inconforme con la determinación del TPI, el apelante presentó moción de reconsideración ante dicho foro judicial. En su escrito, argumentó que no era correcta la forma en que el tribunal había resuelto. Pero que aun presumiendo que ello era correcto, el TPI estaba impedido de desestimar la demanda presentada, ya que aún restaban por resolver dos controversias dentro del mismo caso. Éstas eran: si el Secretario de Hacienda podía imponer contribuciones por concepto de arbitrios al apelante, persona distinta a la que la ley reconoce como contribuyente responsable del pago de arbitrios; y, aun si el contribuyente fuera el apelante, si el Secretario de

Hacienda podía tasarle una deficiencia por este concepto en su contra sin garantizarle un debido proceso de ley y salvaguardas de la Sección 6002(a) del CRI, 13 L.P.R.A. § 8022(a). Por su parte, los apelados presentaron réplica a la moción de reconsideración. Finalmente, el TPI determinó sostener su sentencia, denegando la moción de reconsideración presentada por el apelante.

De esta determinación del TPI, el apelante acude ante nos para plantearnos la comisión de los siguientes errores:

"**A. ERRÓ el TPI al desestimar la demanda del [apelante] sin atender en la Sentencia Apelada TODAS las controversias ante su consideración.**

**B. ERRÓ el TPI al no resolver que el Secretario no puede exigirle el pago de arbitrios al [apelante].**

**C. ERRÓ el TPI al NO resolver que el Secretario NO puede tasar y cobrar deficiencias por concepto de arbitrios al [apelante] y/o que el Secretario está impedido de tasar sumariamente una deficiencia por concepto de arbitrios al [apelante] sin antes salvaguardarle su debido proceso de ley y las salvaguardas del Subtítulo F del Código.**

**D. ERRÓ el TPI al determinar la Sentencia Apelada que la base contributiva para la imposición de arbitrios contenida en el Código y la contenida en el Reglamento 7215 es la misma y, por ende, que el Secretario puede cobrar arbitrios adicionales basados en el precio final de venta del vehículo al consumidor.**

**E. ERRÓ el TPI al determinar en la Sentencia Apelada que el Secretario está autorizado a: (1) gravar los vehículos de motor que un concesionario vende; (2) impedir su inscripción en el registro del Departamento de Transportación y Obras Públicas.**"

## II

Antes de comenzar de lleno con la discusión del derecho tributario aplicable a los hechos de este caso, es imperativo examinar ciertos principios generales que rigen en nuestro ordenamiento jurídico.

La Constitución del Estado Libre Asociado de Puerto Rico establece que "*[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido*". (Énfasis nuestro). Artículo VI § 2, Constitución del Estado Libre Asociado de Puerto Rico. En vista de lo anterior, el Tribunal Supremo ha resuelto que una agencia únicamente tiene los poderes otorgados **expresamente** por su ley habilitadora ▮ y aquellos que sean indispensables para llevar a cabo sus deberes y responsabilidades. (Énfasis nuestro). *ASG v. Municipio de San Juan*, Opinión del 30 de junio de 2006, **2006 J.T.S. 124**.

De este modo, la agencia no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no esté **claramente autorizada por ley para ello.** (Énfasis nuestro). *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, 111 D.P.R. 686 (1981). Ni la necesidad, ni la utilidad, ni la conveniencia pueden sustituir al estatuto en cuanto a la fuente del poder de una agencia administrativa. *ASG v. Municipio de San Juan, supra; Martínez Segarra v. Rosado Santoni*, 165 D.P.R. 582 (2005).

No obstante, al interpretar el alcance de los poderes delegados a una agencia administrativa, los tribunales no debemos limitar el análisis a una interpretación restrictiva de su estatuto habilitador. *Lebrón v. El Comandante Oper. Co., Inc.*, 148 D.P.R. 298 (1999). La ley orgánica de la agencia, así como toda otra ley, debe ser interpretada tomando siempre en cuenta la intención legislativa, atribuyéndole un sentido que asegure el resultado pretendido por el legislador. *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991). En este ejercicio, los tribunales debemos evitar interpretaciones que puedan conducir a resultados irrazonables o absurdos. *Depto. de*

*Hacienda v. Telefónica Larga Distancia de P.R.,* 164 D.P.R. 195 (2005).

En este sentido, nuestro análisis debe centralizarse en identificar si la autoridad ejercida por la agencia cumple con el fin de su ley habilitadora y se encuentra dentro de los poderes que le fueron conferidos. *Caribe Communications, Inc. v. Puerto Rico Telephone Co., Inc.,* 157 D.P.R. 203 (2002). En otras palabras, debemos determinar si la función desempeñada por el organismo administrativo le fue encomendada legislativamente de manera expresa o implícita, o si surge de su actividad o encomienda primordial. *ASG v. Municipio de San Juan, supra.*

En cuanto a la interpretación de la ley, el Artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. § 14, dispone que cuando la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada bajo el pretexto de cumplir con su espíritu. Por otro lado, el Tribunal Supremo ha resuelto que la letra de la ley no debe seguirse ciegamente cuando ello iría en detrimento de su espíritu y fin. *Sucn. Álvarez v. Srio. de Justicia,* 150 D. P.R. 252 (2000).

Los tribunales debemos interpretar los estatutos tomando en consideración el propósito social que los inspiró, dándoles un sentido lógico a sus diversas disposiciones y supliendo posibles deficiencias cuando sea necesario. *Sucn. Álvarez v. Srio. de Justicia, supra.*

El Tribunal Supremo estableció que en la interpretación de leyes que imponen contribuciones, es práctica establecida no extender sus disposiciones, por implicación, más allá del claro alcance del lenguaje usado, o ampliar su radio de manera que comprenda materias que no han sido específicamente señaladas. En caso de duda, se interpretan estrictamente en contra del Gobierno y a favor del ciudadano. *Romero Barceló v. E.L.A.,* Opinión del 10 de noviembre de 2006, **2006 J.T.S. 170**.

Por último, cabe señalar que el Foro Superior ha resuelto que en caso de que un organismo administrativo actúe más allá del poder que le ha sido delegado, su actuación es *ultra vires*. Cuando una actuación *ultra vires* se da en el ámbito de la facultad reglamentaria del organismo, es nuestro deber declarar dicho reglamento inválido. *J. P. v. Frente Unido I,* 165 D.P.R. 445 (2005).

**Legislación sobre la imposición de arbitrios a los vehículos de motor nuevos.**

La Ley Núm. 80 del 17 de octubre de 1992, 13 L.P.R.A. §§ 9001 a 9004(a), conocida como *"Ley para establecer un nuevo sistema de arbitrios sobre automóviles y otros vehículos de motor"* (en adelante Ley 80), enmendó la Ley General de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987 con el propósito de modificar la base sobre la cual se computaba el arbitrio que pagaban los vehículos de motor nuevos. La nueva base contributiva para el cobro de arbitrios sería *"el precio sugerido de venta al consumidor"*. Este término se definió en la Ley 80 de la siguiente forma:

*"(15) Precio sugerido de venta al consumidor. – Significará:*

*(A) Vehículos nuevos para la venta – En caso de automóviles nuevos y de vehículos de uso múltiple nuevos, introducidos al país por distribuidores y traficantes autorizados, el precio sugerido de venta al consumidor incluirá el costo básico del modelo del automóvil nuevo y del vehículo de uso múltiple nuevo incluyendo el equipo opcional instalado de fábrica, más el seguro y flete de importación, el margen de ganancia para la venta, los equipos instalados localmente y los costos asociados con la preparación y entrega del vehículo."*

Bajo este nuevo sistema, el precio se establecería directamente por el importador-distribuidor en mutuo acuerdo con el concesionario-vendedor, sin intervención del Estado. La ley, además, estableció un sistema de rotulación único que no diera lugar a interpretaciones erróneas o arbitrarias que redundaran en perjuicio del

consumidor ni de los ingresos del Estado. Exposición de Motivos de la Ley 80.

Por los hechos particulares de este caso, vale destacar porciones de la discusión realizada en la Cámara de Representantes, al aprobar la Ley 80, *supra*. Las incluimos a continuación:

*"[L]uego de un diálogo abierto con la industria, todos los sectores de la industria redactamos el Proyecto 1707. Un proyecto que establecía... el precio de venta al consumidor como base para calcular el arbitrio. En cierta forma un "sales tax", un impuesto sobre la venta. En otra forma no lo era, pues como saben los señores legisladores, un impuesto sobre la venta como el que existe en los Estados de la Unión Federada utiliza la venta al consumidor como el evento contributivo, la obligación de pagar la contribución, el "sales tax", surge cuando se vende el artículo al consumidor, y esa base no se podía utilizar en Puerto Rico porque se afectaría el flujo de fondos al Departamento de Hacienda.*

*Los arbitrios sobre los automóviles representan el cuatro por ciento del total de los recaudos, por lo que cualquier sistema diseñado sobre este asunto, por fuerza tiene que garantizar el flujo sostenido de fondos cobrados por arbitrios al Departamento de Hacienda. El proyecto aprobado con el respaldo tripartita en la Cámara tenía la particularidad de utilizar como base el precio de venta al consumidor, pero manteniendo el evento contributivo como lo tiene la ley actual, la introducción del carro, o automóvil al mercado de Puerto Rico. De manera que hacía un sistema estimado. ¿Estimado de qué? Estimado de cuál iba a ser el precio de venta al consumidor en el momento en que se vendiera el carro. Y eso hacía necesario una contabilidad muy complicada en el Departamento de Hacienda por cada vehículo. Un estimado de cuál iba a ser el precio de venta, un pago o afianzamiento, y luego los créditos por lo pagado de más, o reducción y cobro por lo pagado de menos. El Departamento de Hacienda dijo, "No podemos administrar un sistema así, necesitamos un sistema que tenga más certeza...*

*........*

*Así las cosas, hemos preparado este sustitutivo del Proyecto 1707, que utiliza el **precio de venta sugerido**. **Fíjese que es lo más que se acerca al precio de venta al consumidor**, el precio de venta al consumidor sugerido por el fabricante o por el importador al consumidor al momento de la introducción del carro en Puerto Rico. O sea, cuando ocurre el evento contributivo, cuando surge la obligación de pagar el arbitrio-igual que ahora, en lugar de usar la cifra elástica, misteriosa, desconfiable, el FOB va a utilizar el cálculo de cuál será el precio de venta al consumidor, que incluye todos los costos, incluyendo las ganancias del importador y el concesionario, si hay un concesionario distinto al importador. Y este precio será rotulado y puesto en el cristal del vehículo, de manera que el consumidor vea sobre qué cantidad es que se está pagando.*

*Eso permite una certeza que evita las lagunas y los huecos que tiene la actual ley, y que la hace vulnerable al fraude. A la misma vez, crea una dinámica de las fuerzas del mercado que obligan a ese fabricante a decir la verdad, porque si trata de subvaluar ese precio sugerido se va a afectar su relación con el concesionario. Y si lo exagerara, sería absurdo, pagaría más arbitrios de los que le corresponde pagar, y también se afectaría su relación con el concesionario. De manera que la garantía de que se va a decir la verdad ahí, está no sólo en las penalidades contributivas por cometer fraude, sino en las fuerzas naturales de la competencia económica que promueven que verdaderamente se identifique el precio sugerido como el precio real al que se espera que se venda ese vehículo."* (Énfasis nuestro). Diario de Sesiones de la Cámara de Representantes, 2 de octubre de 1992, págs. 54-55.

La Ley 80 en su Artículo 13 facultó al Secretario de Hacienda para que instituyera mediante reglamento todas las normas necesarias para la aplicación de dicha Ley. Así pues, Hacienda aprobó el Reglamento 5020 del 27 de enero de 1994, ▪ que entró en vigor el 26 de febrero del mismo año. Este Reglamento especificó sobre el concepto *"precio sugerido de venta al consumidor"* de los vehículos nuevos para la venta, lo siguiente:

*"En el caso de automóviles nuevos y de vehículos de uso múltiple nuevos introducidos al país por distribuidores y traficantes autorizados, el "precio sugerido de venta al consumidor" significará aquel precio por el cual el vehículo o vehículos similares serán vendidos al detal al público consumidor en el mercado libre, excluyendo el arbitrio, independientemente de si el vehículo en particular va a ser vendido a un precio menor por razón de cualquier consideración comercial o de cualquier otro tipo. Este precio sugerido de venta al consumidor nunca podrá ser menor al costo básico del modelo. El precio sugerido de venta al consumidor incluirá el costo básico del modelo y lo siguiente: el equipo opcional instalado en fábrica; el equipo opcional instalado en Puerto Rico; los seguros y fletes de importación; **el margen de ganancia para la venta;** los costos asociados con la preparación y entrega del vehículo; y cualquier otro costo relacionado con la entrega del vehículo. [...] Toda declaración de venta en exceso del precio sugerido de venta al consumidor deberá ser evidenciada para determinar si el incremento está sujeto al pago de arbitrios adicionales. Artículo 3 (14) (a) del Reglamento 5020".* (Énfasis nuestro).

El Artículo 4 del Reglamento 5020 dispuso sobre el procedimiento y declaración de arbitrios en los casos de automóviles. En relación a la controversia que nos atañe, los incisos 4 y 5 del citado artículo disponen lo siguiente:

*"(4) En el caso de distribuidores que importan automóviles y vehículos de uso múltiple nuevos a Puerto Rico y que mantienen una relación comercial con uno o más "dealers" a los fines de que esos "dealers" realicen las ventas al detal de dichos vehículos, el precio sugerido de venta al consumidor dispuesto en el inciso A (1) de este Artículo será aquél que el "dealer" utilizará para la venta de dichos vehículos al detal. Esto presupone que el distribuidor deberá determinar el precio sugerido de venta al consumidor para el embarque correspondiente, incluyendo todos los elementos de precio necesarios que hacen posible la presentación de los vehículos al público consumidor y que constituyen el precio de oferta de esos vehículos al detal.*

*En el caso de que el distribuidor incluya en la Declaración de Arbitrios un precio sugerido de venta menor al precio de venta al detal que el "dealer" exhibirá para el vehículo particular, será responsabilidad del distribuidor radicar ante el Director una Declaración de Arbitrios enmendada que refleje la diferencia en el precio sugerido de venta al consumidor y el arbitrio a pagar. En este caso, el Negociado de Arbitrios permitirá al distribuidor una nueva etiqueta adhesiva, según se establece en el Artículo 9 de este Reglamento, que reflejará el nuevo precio sugerido de venta al consumidor y que sustituirá la etiqueta que originalmente se le entregó a dicho distribuidor para el vehículo en particular.*

*(5) [...] En caso de que el "dealer" notifique al distribuidor un precio sugerido de venta al consumidor mayor al que declarará el distribuidor, en caso de que el vehículo no se haya introducido a Puerto Rico, el distribuidor estará obligado a declarar dicha unidad con el precio sugerido de venta al consumidor que el "dealer" informe.*

*[...]".*

Luego, en 1994 se adoptó una Reforma Contributiva con el fin de integrar en un sólo documento toda la legislación contributiva. Así, se aprobó el Código de Rentas Internas de Puerto Rico de 1994, Ley Núm. 120 del 31 de octubre de 1994. Esta nueva ley derogó cualquier legislación anterior existente. No obstante, incorporó las disposiciones de la Ley 80, *supra.* Así, dejó como base contributiva para la imposición de arbitrios *"el precio sugerido de venta al consumidor"* y lo definió como sigue:

*"(15) Precio sugerido de venta al consumidor. – Significará:*

*(A) Vehículos nuevos para la venta – En el caso de automóviles nuevos y de vehículos de uso múltiple nuevos,*

*introducidos al país por distribuidores y traficantes autorizados, el precio sugerido de venta al consumidor incluirá el costo básico del modelo del automóvil nuevo y del vehículo de uso múltiple nuevo incluyendo el equipo opcional instalado de fábrica, más el seguro y flete de importación, el margen de ganancia para la venta y los costos asociados con la preparación y entrega del vehículo."*

La única diferencia que se introdujo con esta nueva definición fue la exclusión de los equipos instalados localmente para determinar el precio sugerido de venta al consumidor.

Posteriormente, en el año 2006 se aprobó la *"Ley de la Justicia Contributiva de 2006"* a los fines de enmendar el Subtítulo B del CRI de 1994, sobre arbitrios de términos generales, entre otros. Ésta entró en vigor el 15 de noviembre de 2006. En cuanto a la definición del término de precio sugerido de venta al consumidor para los automóviles nuevos para la venta, dispone:

*"En el caso de automóviles nuevos, introducidos al país por distribuidores y traficantes autorizados, el precio sugerido de venta al consumidor incluirá el costo básico del modelo del automóvil incluyendo el equipo opcional instalado de fábrica, más el seguro y flete de importación, el **margen de ganancia <u>estimada</u> para la venta**, y los costos asociados con la preparación y entrega del vehículo."* (Énfasis nuestro).

Como puede apreciarse, en esta ocasión, el legislador introdujo un cambio en la definición al incluir la palabra *"estimada"* en relación al criterio del margen de ganancia.

Por otro lado, el 1 de septiembre de 2006, Hacienda aprobó el Reglamento Núm. 7215 (en adelante Reglamento 7215) con el fin de derogar el Reglamento Núm. 5020 e implantar las disposiciones del Subtítulo B del CRI sobre arbitrios. Su Artículo 2001-1(28)(ii), intitulado *"Definiciones"*, dispone sobre el precio sugerido de venta lo siguiente:

*"Este precio sugerido de venta al consumidor nunca podrá ser menor del costo básico del modelo. [...] Incluirá el costo básico del modelo y lo siguiente: el equipo opcional instalado en fábrica, los seguros y fletes de importación, **el margen de ganancia para la venta**, los costos asociados con la preparación y entrega del vehículo, y cualquier otro costo relacionado con la entrega del vehículo. [...]. El costo básico significa el costo facturado por el fabricante al distribuidor o traficante en Puerto Rico y nunca será menor que el costo F.O.B. del vehículo. [...]. **Toda declaración de venta en exceso del precio sugerido de venta al consumidor será examinada para determinar si el incremento está sujeto al pago de arbitrios adicionales.**"*

Nos parece de suma importancia mencionar que el CRI también expresa en la Sección 2011(2) que la determinación del Secretario de Hacienda en cuanto a si el precio contributivo no refleja el precio del vehículo. Establece dicha sección que *"en ningún caso se entenderá que esta facultad autoriza al Secretario a sustituir, como norma de aplicación general, la base del precio sugerido de venta por cualquier otra base fiscal alterna, excepto para corregir el precio contributivo determinado irrazonablemente por el importador en ese caso en particular".* 13 L.P.R.A. § 9014.

Por último, respecto a quién es el contribuyente para efectos del pago de arbitrios, el CRI, en su Sección 2068 dispone que en los casos de artículos gravados, por los cuales sea necesario pagar arbitrios, que sean importados en cualquier forma, la persona responsable del pago de los impuestos, o el contribuyente, será *"[e]l consignatario si el artículo viene consignado a un consignatario".*

### III

Tenemos ante nuestra consideración una sentencia del TPI, en la que se declaró no ha lugar una solicitud de *injunction* y las alegaciones centrales contenidas en la demanda presentada por el apelante. Analizados los recursos presentados ante nos y el derecho que gobierna la cuestión, decidimos revocar la determinación del

foro de instancia. A continuación esbozamos los argumentos que sostienen nuestra decisión. Los errores levantados por el apelante se encuentran relacionados entre sí. Por lo tanto, los discutiremos en conjunto.

La controversia que promueve el litigio que hoy nos ocupa versa sobre la forma utilizada por Hacienda para realizar el cobro de arbitrios sobre vehículos de motor nuevos para la venta que son importados a Puerto Rico. Cuando el precio de venta final de la unidad vehicular es mayor al precio sugerido de venta reportado por TPR, Hacienda re-calcula los arbitrios y exige el pago de la diferencia que surja entre el precio sugerido reportado y el precio de venta final. Hasta tanto no se satisfaga la deficiencia contributiva informada por Hacienda, el vehículo no puede ser inscrito como corresponde en el Departamento de Transportación y Obras Públicas de Puerto Rico.

Los argumentos principales del apelante en tenaz oposición a este proceso son: que la base utilizada por Hacienda para realizar el cobro de arbitrios es incorrecta; que el contribuyente responsable para efectos del pago de estos arbitrios no es el apelante, sino el concesionario, que en este caso es TPR; y, que en todo caso, de concluirse que es correcto el cobro de estos arbitrios, por tratarse de una deficiencia contributiva, Hacienda tiene la obligación de proveer un debido proceso de ley al contribuyente deudor.

Luego de un riguroso estudio sobre los hechos y el derecho vigente, colegimos que la base contributiva sobre la cual Hacienda realiza el cobro de arbitrios en la actualidad es incorrecta. Comenzamos por mencionar que la Asamblea Legislativa confirió los poderes que interesaba conceder a Hacienda para el cobro de contribuciones por medio del CRI; por lo tanto, sus actuaciones deben circunscribirse a lo allí dispuesto. *ASG v. Municipio de San Juan, supra.* Nótese que el CRI es claro y enfático en que la base a ser utilizada para establecer el arbitrio a pagar en cada caso es el **precio sugerido de venta**. La Asamblea Legislativa definió este concepto con el propósito de disipar toda duda posible sobre lo que constituye el precio sugerido de venta y las partidas incluidas en él. En ninguna parte menciona que la base para el pago de arbitrios es el precio final de venta. Tampoco que ello sea tomado en cuenta como una partida dentro del precio sugerido de venta. Esta interpretación incluso parece ilógica.

Conforme al derecho vigente, el precio de venta sugerido sí incluye, entre otras cosas, el margen de ganancia **estimada** para la venta. 13 L.P.R.A. § 9001. El término *"estimada"* elimina la posibilidad de que se tenga que tomar en cuenta el margen *"real"* de ganancia para la venta. Además, se exige que dicho arbitrio se satisfaga **antes** de que se levante la unidad y del derecho citado se desprende que la intención legislativa nunca fue que se utilizara el precio final de venta como base para calcular los arbitrios a pagarse sobre los vehículos de motor nuevos e importados. Así lo decidimos en *Toyota de Puerto Rico v. Departamento de Hacienda,* KLAN-2007-01772, donde TPR nos planteó que no tenía control sobre el precio real de venta de los vehículos de motor. Esto es, Hacienda insistía en cobrarle los arbitrios a base del precio final de venta al que el *dealer* vendía la unidad al consumidor. En aquella ocasión, determinamos que no procedía el cobro de arbitrios utilizando como base el precio final de venta, por lo que Hacienda no tenía la facultad de gravar la fianza de TPR para garantizar que en su día, se satisficiera el pago de estos arbitrios producto del recálculo aquí explicado.

Por otro lado, vemos que existe una clara contradicción en lo que dispone el CRI, versus lo dispuesto en la reglamentación promulgada por Hacienda. Mientras el CRI elimina la posibilidad de utilizar el precio de venta final de las unidades como base para imponer arbitrios, el Reglamento 7215 de Hacienda elimina la palabra *"estimada"* de la definición de *"precio sugerido de venta"*, y aclara que cada declaración de venta en exceso al precio sugerido de venta inicialmente reportado a Hacienda, será examinada por el Secretario para determinar si el incremento está sujeto al pago de arbitrios adicionales. Reglamento 7215, Artículo 2001-1(28)(ii).

A tenor con lo anterior, las disposiciones de este Reglamento que versan sobre la venta de vehículos de motor nuevos infringe de forma directa las disposiciones del CRI, pues varía la base a utilizarse por Hacienda para el cobro de los arbitrios sobre estas unidades. De los historiales legislativos así como del cuerpo del CRI,

se desprende con claridad que el legislador nunca quiso utilizar el precio de venta final de las unidades como base para imponer arbitrios, que es un elemento incierto. Como ya resolvimos en el caso previo de *Toyota*, de ser ésta la intención legislativa, así lo hubiera expresado el legislador. En lugar de *"precio sugerido* ▆ *de venta"*, hubiera indicado que la base para imponer contribuciones sería el *"precio final de venta"*. Ello no ocurrió.

Siendo éste el marco fáctico ante nuestra consideración, estamos obligados a declarar inválidas: la Sección (28)(ii) del Artículo 2001-1 y las Secciones (a)(4), (d)(1), (d)(2) y (d)(4) del Artículo 2014(a)-4 del Reglamento 7215, por constituir una actuación *ultra vires* por parte de la agencia. *J. P. v. Frente Unido I, supra*. Cabe destacar que la cláusula de separabilidad del referido reglamento dispone que *"[s]i cualquier artículo, párrafo, inciso, cláusula, subcláusula o parte de este Reglamento fuese declarado inconstitucional o nulo por un tribunal con jurisdicción, la sentencia dictada a esos efectos no invalidará el resto de este Reglamento, quedando sus efectos limitados al artículo, párrafo, inciso, cláusula, subcláusula o parte de este Reglamento que fuere declarado inconstitucional o nulo"*. Por tanto, el referido reglamento queda vigente excepto las disposiciones antes mencionadas.

Si tuviéramos ante nos el panorama irreal de que las secciones antes indicadas que definen lo relacionado a vehículos de motor nuevos para la venta fueran válidas, tampoco podríamos catalogar como correcta la actuación de Hacienda de operar un sistema que automáticamente impone el pago de arbitrios adicionales a cada venta declarada en exceso del precio de venta sugerido informado. Nuestra contención se debe a que conforme al Reglamento 7215, el proceso para imponer el pago de contribuciones en exceso requiere un examen previo para determinar si procede o no el cobro por la diferencia reportada. La situación actual en Hacienda es que no se realiza dicho examen. El cobro de la deficiencia contributiva se realiza automáticamente por medio de un sistema computarizado que sólo toma en cuenta si existe una diferencia entre el precio reportado y el precio de venta final del vehículo. Por lo tanto, reiteramos que aun cuando la totalidad del reglamento fuera válido, estaríamos obligados a resolver en contra de la actuación de Hacienda.

Es importante indicar que, aparte de que el derecho aplicable al caso de autos es claro, no debemos perder de perspectiva el principio de derecho tributario que exige que las disposiciones sobre esta materia se interpreten a favor del contribuyente, no del Estado. *Romero Barceló v. E.L.A., supra*. Al resolver que el cobro de deficiencias en arbitrios realizado por Hacienda sobre la base del precio final de venta es incorrecto, es innecesario determinar a quién corresponde satisfacer dicho pago y si la notificación de esta deficiencia requiere que se conceda al ciudadano un debido proceso de ley. De igual forma, aclaramos que Hacienda no puede gravar los vehículos de motor, impidiendo su inscripción en el Departamento de Transportación y Obras Públicas al amparo de una deuda que no es recobrable por ser inválida en derecho.

Le corresponde a la Asamblea Legislativa determinar si impone responsabilidad contributiva por la diferencia entre el precio sugerido y el precio real de venta; expresar que la base contributiva a estos efectos lo sea el precio final; u optar por conceder autoridad a Hacienda para cobrar la diferencia entre el precio sugerido de venta y el precio final. Mientras ello no ocurra, tenemos que resolver de acuerdo a lo que dispone expresamente la ley.

## IV

Por los fundamentos antes expuestos, revocamos la determinación del Tribunal de Primera Instancia y se devuelve el caso para la continuación de los procesos, disponiendo que Hacienda deberá proceder a anular las secciones declaradas inválidas y a armonizar las restantes disposiciones legales del Reglamento Núm. 7215 conforme a lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.