ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| SERVIMETAL LLC.<br><br>Recurrente<br><br>v.<br><br>NEGOCIADO DE TRANSPORTE Y OTROS SERVICIOS PÚBLICOS<br><br>RECURRIDO | KLRA202300528 | *Revisión Administrativa* Procedente de la Negociado de Transporte y Otros Servicios Públicos<br><br>Número de Caso ante el Negociado Boleto Núm. 2056 Solicitud Núm. 933490 Hoja de Intervención Núm. 933281 Franquicia Núm. N/A<br><br>Sobre: Recurso de Revisión por Expedición de Boleto de Infracción |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico a 28 de noviembre de 2023.

Servimetal, LLC (parte recurrente o Servimetal) nos solicita que revoquemos una determinación del Negociado de Transporte y otros Servicios Públicos (en adelante, Negociado o NTSP) emitida el 30 de agosto de 2023. En la referida decisión administrativa, el Negociado denegó la revisión del boleto Núm. 2056 y ordenó el pago de la multa de $2,000.00 por infracción al inciso A-1.01 del Código de Reglamentos del Negociado.

Por los fundamentos que exponemos, confirmamos el dictamen recurrido.

## I.

El 8 de junio de 2022 el Inspector Francis González Camacho, realizó la intervención 933281 a un vehículo comercial

con peso de 19,500 libras por operar sin autorización del Negociado de Transporte y Servicio Público. El nombre del cliente identificado era Servimental LLC, a quien se le impuso el boleto de infracción número 2056 por $2,000.00 por prestar un servicio no autorizado, según la falta codificada como A-1.01 del Código de Reglamentos del Negociado de Transporte y Otros Servicios Públicos. Esta falta dispone como sigue:

> Dedicarse a prestar, ofrecer o promocionarse para ofrecer servicios públicos mediante paga sin haber previamente solicitado y obtenido la correspondiente autorización del NTSP. Esta infracción incluye transitar por las vías públicas con una tablilla publica instalada en la unidad y con la autorización vencida por seis (6) meses o más.

En desacuerdo, Servimetal presentó un Recurso de Revisión ante el Negociado de Transporte, asignado al número 933490. Allí alegó que, "Servimetal, LLC es una empresa privada, no ofrece servicios públicos mediante paga. Somos mayoristas en la venta de materia prima de metales, no se le cobra al comerciante por la entrega de estos bienes. Solo transportamos nuestro producto, recalco: No nos dedicamos a transportar carga púbica mediante paga. Este boleto #2056, NO aplica".[1]

La vista pública quedó pautada para el 18 de octubre de 2022. A esta comparecieron el inspector Francis González y, en representación de Servimetal, acudió el Lcdo. Eugene Scott acompañado de Eddie Otero, Vicepresidente de Finanzas.

Ese día la Oficial Examinadora le solicitó a Servimetal exponer por escrito sus argumentos. Según requerido, el 4 de noviembre de 2022 Servimetal presentó el escrito de *Memorando de derecho en apoyo a solicitud de revisión*.

Tras ello, el 16 de enero de 2023 la Oficial Examinadora rindió su informe, en el que recomendó declarar *No Ha Lugar* el

---

[1] Apéndice pág. 8.

recurso de revisión por expedición de boleto de infracción. En su análisis emitió las siguientes determinaciones de hechos:

1. El vehículo intervenido, el cual fue descrito por el Inspector como un vehículo pesado, de plataforma fija, carga con amarres y lona, es propiedad del Peticionario-Recurrente.

2. Durante la intervención, el vehículo de tablilla H69287 estaba siendo operado por el señor Ismael Quintana. Se le solicitó al operador su licencia de operador, certificación de autorización del Negociado de Transporte y factura por la mercancía transportada. El operador proveyó al Inspector una factura o conduce que indica que el "Carrier" es Servimetal y que la mercancía iba dirigida al señor Julio Pérez en la dirección de Patillas. La carga en ese entonces constaba de cinco (5) paletas de madera por la cantidad facturada al cliente de $562. Sin embargo, no contaba con licencia de operador y/o autorización del Negociado de Transporte. El vehículo, además, llevaba tablilla privada. Por ello, el inspector impuso una multa por ofrecer servicios no autorizados ascendente a $2,000.00.

3. Conforme a la Certificación de Capacidad de Carga emitida por la Autoridad de Carreteras y Transportación sobre el vehículo de tablilla H69287, dicho vehículo tiene un Peso bruto de $1,500 libras; un Peso Descargado de 11,220 libras y una capacidad de carga de 8,280 libras.

Como parte de las conclusiones de derecho, la Oficial Examinadora mencionó que "[d]urante la vista, la parte peticionaria-recurrente sostuvo que el Negociado de Transporte carece de jurisdicción para regular las actividades que realiza, ello bajo el fundamento de que no son una compañía de servicio público dado que no cobran ni ofrecen transporte de carga mediante paga, sino que transportan su propia mercancía para entregar a personas-clientes-privadas. Esbozó que las infracciones son improcedentes."[2] Más adelante explicó que conforme la definición del término de "vehículo de motor comercial", el Negociado de Transporte ostenta jurisdicción para regular el transporte de carga en el vehículo del peticionario-recurrente, pues se encontraba ofreciendo servicios públicos mediante paga sin haber previamente solicitado y obtenido autorización del Negociado.[3]

---

[2] Apéndice pág. 24.
[3] Apéndice págs. 22-25.

El 30 de agosto, notificada el 12 de septiembre de 2023, el Negociado de Transporte aprobó y acogió el Informe de la Oficial Examinadora y declaró *No Ha Lugar* el Recurso de Revisión por Expedición de Boleto en cuanto a la infracción A-1.01 por la cantidad de $2,000.00. Ordenó así el pago de la multa.

En desacuerdo, el 11 de octubre de 2023 Servimetal presentó el recurso que revisamos alegando la comisión de los siguientes errores:

> Primero:  Erró el Negociado al determinar que Servimetal ofrece "servicios públicos mediante paga" según definidos por la Ley Núm. 109-1962, infra y el Reglamento 9358.

> Segundo:  Erró el Negociado al imponerle a Servimetal una multa de $2,000 al amparo de la Infracción Núm. A-1.01 del Reglamento Núm. 9358, en contravención con su facultad y de manera inconsistente con otras determinaciones.

Según ordenado, el Negociado de Transporte y Otros Servicios Públicos, representado por la Oficina del Procurador General de Puerto Rico presentó su posición.  Con el beneficio de ambas comparecencias, disponemos.

## II.

## A.

Los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Hernández Feliciano v. Municipio de Quebradillas, 211 DPR ___ (2023), 2023 TSPR 6, res. 25 de enero de 2023; Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Estos dictámenes cuentan con una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. OEG v. Martínez Giraud, 210

DPR 79 (2022); Capó Cruz v. Junta de Planificación et al., 204 DPR 581 (2020).

En cuanto a las determinaciones de hechos emitidas por la agencia, la parte que las impugna tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. OEG v. Martínez Giraud, *supra*; OCS v. Universal, 187 DPR 164, 178-179 (2012); González Segarra v. CFSE, 188 DPR 252, 276-278 (2013). Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Véanse Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme, Ley 38-2017, (LPAU); Hernández Feliciano v. Municipio de Quebradillas, *supra*; ECP Incorporated v. OCS, 205 DPR 268, 281-282 (2020).

Así pues, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. Hernández Feliciano v. Municipio de Quebradillas, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 628.

**B.**

El Negociado de Transporte y otros Servicios Públicos (NTSP) fue creado en virtud de la Ley Núm. 211-2018, conocida como la "Ley de Ejecución del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico". Mediante referida ley, el Negociado de Transporte es la agencia encargada de administrar la Ley 109 del 28 de junio de 1962, conocida como

"Ley de Servicio Público de Puerto Rico", 27 LPRA Sec. 1001 y siguientes (Ley de Servicio Público).

El Artículo 14 de la Ley de Servicio Público delegó en el Negociado de Transporte, 27 LPRA sec. 1101, entre otros, la facultad para "reglamentar las compañías de servicio público, porteadores públicos y porteadores por contrato". De igual forma, el Negociado de Transporte, "tendrá facultad para reglamentar las **empresas de vehículos privados** dedicados al comercio, incluyendo todos los **vehículos de motor comercial**. Estas empresas no se considerarán como Porteadores Públicos." Además, estará facultado para "imponer multas administrativas y otras sanciones al amparo de esta Ley; para conducir investigaciones e intervenciones". Artículo 14, incisos a y b.

Agrega el Artículo 14 de la Ley de Servicio Público que,

(c) Los poderes y facultades dispuestos en los incisos (a) y (b) de este Artículo serán ejercitables **no solamente** en relación con las compañías de servicio público, porteadores por contrato, empresas de vehículos privados dedicados al comercio, personas que se dediquen al transporte turístico, según se define en esta Ley y entidades que actúen como compañías de servicio público o como porteadores por contrato, sino también con respecto a:

(1) Toda persona o entidad que infrinja a las disposiciones de esta Ley.

(2) Toda persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público.

(3) **Toda persona o entidad que lleve a cabo cualquier actividad para la cual sea necesaria obtener una autorización o endoso del NTSP**.

(4) Toda persona o entidad cuyas actuaciones u omisiones resulten en perjuicio de las actividades, recursos o intereses en relación con los cuales el NTSP tiene poderes de reglamentación, supervisión o vigilancia.

El Artículo 2 de la Ley 109-1962, 27 LPRA sec. 1002, define distintos conceptos que, por su pertinencia, citamos:

(c) **Autorización**.       Incluye licencia, permiso, franquicia, concesión, poder, derecho, privilegio y permiso temporáneo de cualquier clase, expedido por el Negociado de Transporte y otros Servicios Públicos o por el extinto Consejo Ejecutivo. El uso de cualquiera de estos términos solo o en conjunción con uno o más de ellos no tiene el propósito de excluir los otros. Toda persona natural o jurídica regulada por el Negociado de Transporte y otros Servicios Públicos, **incluyendo los vehículos de motor comercial, necesita una autorización expedida por éste para poder operar en Puerto Rico.**

(h) Compañía de **servicio público**. Incluye todo porteador público, empresa de gas, empresa de energía eléctrica, empresa de dique para carenar, corredor de transporte, empresa de red de transporte, operador de muelle, almacenista, empresa de puentes de pontazgo, empresa de fuerza nuclear, empresa de envase, de venta, reparación y reconstrucción de cilindros de gas licuado de petróleo, empresa de servicio y venta de taxímetros y empresa de mudanzas que se ofrecen a prestar o prestan sus servicios u ofrecen a entregar o entregan productos, mediante paga al público en general, o a una parte del mismo, en Puerto Rico. **No incluye a personas que prestan el servicio para su uso exclusivo.**

(l) Empresa de acarreo de carga en vehículos de motor.  Incluye toda persona, que en su carácter de porteador público fuere dueña, controlare, explotare o administrare cualquier vehículo de motor que se utilice para el acarreo de carga por cualquier vía pública terrestre, independientemente de que tal acarreo se efectúe o no entre terminales fijos, o a través de rutas regulares o irregulares.

(cc) **Empresa de vehículos privados dedicados al comercio**. Incluye a toda persona que no sea porteador público ni porteador por contrato y que transporte en un vehículo de motor, bienes, cargas o productos de los cuales es dueño, con el propósito de venta, alquiler o arrendamiento. El vehículo deberá estar registrado en el Departamento de Transportación y Obras Públicas a nombre del dueño de la carga y así tiene que constar en el Permiso para Vehículos de Motor o Arrastres.

(hh) Mediante paga. Incluye cualquier remuneración pagada, prometida o debida, directa o indirectamente.

(nn) **Porteador por contrato**.  Incluye toda persona, excepto los porteadores públicos, que se dedique **mediante paga**, bajo contrato o acuerdo individual personal o por medios tecnológicos, al transporte de pasajeros o bienes en vehículos de motor o embarcaciones entre puntos en Puerto Rico, aun cuando dicho transporte se efectúe incidentalmente en la explotación de cualquier otro negocio o actividad con fines pecuniarios o no pecuniarios.

(oo) Porteador público. Incluye toda:

(1)     Empresa de ferrocarriles.
(2)     Empresa de transporte de pasajeros.
(3)     Empresa de transporte de carga, con excepción de los **vehículos privados** dedicados al comercio. […]

(yy) **Vehículo de motor comercial** o Vehículo de Transporte Comercial. Significa cualquier vehículo motorizado autopropulsado o remolcado, usado en una carretera en el comercio interestatal o intraestatal para transportar pasajeros, carga pública o **carga privada**, cuando el vehículo,

(1) Tiene una clasificación de peso bruto del vehículo o una clasificación de peso de la combinación bruta, o **peso bruto del vehículo o peso de la combinación bruta, de 4,536 kg (10,001 libras**) o más, lo que sea mayor; o
[…]

Asimismo, el Artículo 23 (b) de la Ley 109, *supra*, establece que,

Excepto según se dispone más adelante en este Artículo, ninguna persona comenzará a operar como **compañía de servicio público** o **porteador por contrato** ni lo continuará haciendo si ya estuviere operando, a menos que posea una autorización válida del NTSP para tales operaciones. El NTSP podrá intervenir con cualquier persona que sin proveerse de una autorización válida actúe como compañía de servicio público o porteador por contrato y para ordenar a la misma, luego de concederle la oportunidad de una audiencia, que cese dichas actuaciones. 27 LPRA Sec. 1110.

De otro lado, como parte de los poderes delegados, el Negociado de Transporte aprobó el Reglamento número 9358, de 7 de febrero de 2022, "Código de Reglamentos del Negociado de Transporte y Otros Servicios Públicos". El Capítulo 1.03 del Código dispone que su propósito es:

Mediante este Código el Negociado establece los criterios que han de seguirse para autorizar, reglamentar y fiscalizar las empresas de servicio público, el Transporte Comercial y las personas bajo la jurisdicción del Negociado, **incluyendo aquellos vehículos que por su naturaleza caen bajo la clasificación de Transporte Comercial, indistintamente de que los mismos sean**

**utilizadas para fines privados o para ofrecer servicios mediante paga**, así como garantizar que los procedimientos administrativos se efectúen de manera rápida, justa y económica, asegurando la solución equitativa de los casos ante la consideración de este Organismo. Asimismo, el presente Código se emite con el fin de adelantar la Política Pública del Gobierno de Puerto Rico, según expuesta en la Ley de Transformación Administrativa de la Comisión de Servicio Público, Ley 75-2017, de "simplificar y agilizar los trámites administrativos relacionados con la regulación, el licenciamiento y la fiscalización de los servicios públicos y del Transporte Comercial, de manera que se salvaguarde la seguridad sin que se entorpezca el desarrollo económico y la más amplia disponibilidad de servicios al público. (Énfasis nuestro).

A su vez, el Capítulo 1.04 de ese cuerpo legal también dispone que este aplica a, "aquellos vehículos que por su naturaleza caen bajo la clasificación de Transporte Comercial, indistintamente de que los mismos sean utilizadas para fines **privados** o para ofrecer servicios mediante paga."

En cuanto al **vehículo de motor comercial**, el Capítulo 2.293 del Código contiene la siguiente definición:

Vehículo de motor comercial, Vehículo de transporte comercial, Vehículo comercial o CMV. En el presente Código y conforme al Código de Reglamentos Federales, este término tendrá tres (3) significados, según el Capítulo o el tema en el cual se utilice:

a. Para efectos del presente Código, y cuando no se refiera al requisito de CDL ni al uso y las pruebas de sustancias controladas y alcohol, significa cualquier vehículo motorizado autopropulsado o remolcado, usado en una carretera en el comercio interestatal o intraestatal para transportar pasajeros, carga pública o **carga privada**, cuando el vehículo:

i. Tiene una clasificación de peso bruto vehicular o una clasificación de peso bruto de la combinación, o peso bruto vehicular o peso bruto de la combinación, de 4,536 kg (**10,001 libras**) o más, lo que sea mayor; o

Por su parte, el Capítulo 3.03 de referido Reglamento indica que:

Todo vehículo que por su naturaleza cae bajo la clasificación de Transporte Comercial, indistintamente de que sea utilizado para **fines privados o para ofrecer servicio mediante paga, deberá registrarse en el Negociado para poder operar en Puerto Rico**. (Énfasis nuestro).

En cuanto al transporte de carga, el Capitulo XIII del Reglamento dispone como sigue:

13.02 Todo vehículo de motor comercial, además de cumplir con las disposiciones del presente Código y, en particular, el presente Capítulo y el Capítulo XXI, deberá cumplir con el Reglamento para el Transporte Comercial, supra.

13.03 Solicitud de Autorización de Franquicia. Toda persona natural o jurídica que interese ofrecer, brindar o dedicarse a la operación de un vehículo sujeto a las disposiciones de este Capítulo deberá cumplir con el procedimiento dispuesto en el Capítulo III del presente Código, incluyendo el pago de los derechos aplicables a la solicitud.

De otro lado, en cuanto al *conduce o factura* el inciso 21.04 menciona que, "[t]odo conductor u operador de un vehículo que transporte carga mediante paga o utilizando un **vehículo de motor comercial** deberá tener consigo el conduce o factura correspondiente a la carga autorizada. En dicho documento se identificará, como mínimo, el tipo de carga, su lugar de origen y su destino, el dueño y el destinatario."

En cuanto a las multas, el Reglamento contiene la Tabla A-1 de Autorizaciones, con las faltas administrativas codificadas.  En lo aquí pertinente la falta número A-1.01 se refiere a:

Dedicarse a prestar, ofrecer o promocionarse para **ofrecer** servicios públicos mediante paga sin haber previamente solicitado y obtenido la correspondiente autorización del NTSP. Esta infracción incluye transitar por las vías públicas con una tablilla publica instalada en la unidad y con la autorización vencida por seis (6) meses o más.

Cuantía y detalle de la multa:  $2,000.00 R. 75% De estar vencida la autorización por menos de (6) meses, se impondrá la Infracción Núm. A-1.03.

Por esta razón, una agencia no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no esté claramente autorizada por ley para ello. ASG v. Mun. San Juan, 168 DPR 337, 343 (2006); P.R. Lighterage Co. v. Caribe Tugboat Corp., 111 DPR 686 (1981). Es decir, ni la necesidad, ni la utilidad, ni la conveniencia pueden sustituir al estatuto en cuanto a fuente de poder de una agencia administrativa. ASG v. Mun. San Juan, *supra*; Martínez Segarra v. Rosado Santoni, 162 DPR 582 (2005). De otro lado, es un axioma elemental vinculado a la tarea de hacer justicia, que los hechos determinan el derecho y, que para juzgar hay que conocer. Andino v. Topeka, Inc., 142 DPR 933, 938 (1997).

A la luz de la antes mencionada normativa, disponemos.

### III.

Evaluamos los dos señalamientos de error en conjunto por estar relacionados. Servimetal alega que el Negociado en ningún momento ha demostrado que ellos prestan servicios públicos mediante paga. Por ello, entienden, que no puede asumir jurisdicción sobre una actividad que no esté claramente autorizada por ley para ello. Resaltan que Servimetal, como parte del servicio que brinda a sus clientes, transporta, sin que medie compensación alguna, sus productos o bienes desde su centro de operación hasta los centros de almacenaje y distribución o puntos de ventas de sus clientes. Explican que la actividad comercial que realizan no es de "porteador público" o "porteador por contrato" o "empresa de acarreo de carga en vehículos de motor", los cuales si ofrecen un servicio de transportación mediante paga. Sostienen que Servimetal puede catalogarse únicamente como una empresa de vehículos privados dedicados a comercio, sin que medie compensación alguna. Por tanto, alegan que la multa impuesta

por infracción al código A-1.01 por "dedicarse a prestar, ofrecer o promocionarse para ofrecer servicios públicos mediante paga sin haber previamente solicitado y obtenido la correspondiente autorización del NTSP" no procede.

Mencionan que, en un caso anterior de Servimetal, el propio Negociado, cuando revisó el boleto número 505, validó una decisión del oficial examinador Lcdo. Herman F. Valentín Figueroa, quien sostuvo, luego de una vista administrativa que, "el transporte que efectúa el Peticionario-Recurrente es para la entrega de sus propios productos y que no se dedica a prestar, ofrecer o promocionarse para ofrecer servicios de transporte a terceros. Por esta razón, entendemos que esta infracción no procede." Agregó que en esa revisión del Boleto 505, el Negociado emitió una Resolución y Orden. Ante ello, coligen que no hay razón para que haya discrepancia en la misma agencia con el proveedor Servimedical. Aducen como fundamento, que "la determinación administrativa no puede producir soluciones contradictorias para situaciones fundamentalmente idénticas." citando a Asoc. Fcias. Com. v. Depto. de Salud, 156 DPR 105, 136-37 (2002).

El Negociado de Transporte, por su parte, nos informa que de los documentos que el conductor le entregó al Inspector González Camacho, los que constan en el expediente administrativo, surge que el conductor se dirigía a prestar el servicio **prepagado** de entrega de carga al Sr. Julio Pérez en Patillas. Que el peso bruto del vehículo es de 19,500 libras, por lo que, está catalogado como un vehículo de motor comercial. Afirman que el servicio de transporte de carga comercial, el cual se considera público, es uno regulado por el Negociado de Transporte. Por consiguiente, tienen jurisdicción para regular e

intervenir con el referido vehículo. Adujeron que los casos del Tribunal de Apelaciones que citó la parte recurrente, fueron emitidos bajo un estado de derecho previo, por tanto, deben ser rechazados. Evaluamos.

El Negociado de Transporte determinó que el recurrente incurrió en violación al Código A-1.01, por "dedicarse a prestar, ofrecer o promocionarse para ofrecer servicios públicos mediante paga sin haber previamente solicitado y obtenido la correspondiente autorización del NTSP". El Negociado determinó que Servimetal se encontraba ofreciendo servicios públicos mediante paga sin haber previamente solicitado y obtenido autorización del Negociado.

Esta determinación se sustenta con el hecho número dos (2) el cual recopila, en síntesis, que, durante la intervención, el vehículo de tablilla H69287 estaba siendo operado por el señor Ismael Quintana. Este proveyó al Inspector una factura o conduce que indica que el "Carrier" es Servimetal y que la mercancía iba dirigida al señor Julio Pérez en la dirección de Patillas. La carga en ese entonces constaba de cinco (5) paletas de madera por la cantidad **facturada al cliente** de $**562**. Sin embargo, no contaba con licencia de operador y/o autorización del Negociado de Transporte.

Como vemos, la prueba que se presentó en la audiencia, demostró que aun cuando Servimetal alega que no se dedica al transporte de carga mediante paga, cuando se intervino con el operador, este mostró que la carga fue facturada al cliente por $562. Este hecho, lo corroboramos con el documento de *Uniform Stright Bill of Landing Original* que fue incluido en el Anejo III del recurso del Negociado de Transporte, el cual revela que el servicio de acarreo fue prepagado. Al utilizar un vehículo de motor

comercial para acarrear carga, era medular obtener la correspondiente autorización del Negociado de Transporte, tal como lo provee el Capítulo 2 (c) del Reglamento 9358.

Por tanto, la determinación de hecho se sustenta con la evidencia del expediente y no fue controvertida. En ese escenario, queda validada la multa que se impuso por infringir la falta número A-1.01 del Reglamento 9358.

Por último, el caso que atendemos es distinguible a la revisión del Boleto 505 que nos menciona Servimetal, pues referida revisión en ningún lugar se estableció que se facturó por la carga. En el caso ante nuestra consideración, sí se facturó. Al mediar paga en el acarreo, se cumple con los criterios del inciso A-1.01 del Reglamento 9358. Consecuentemente, nos adherimos a la norma general de deferencia a las determinaciones administrativas.

## IV.

Por las razones antes esbozadas, confirmamos la Resolución y Orden emitida por el Negociado de Transporte el 30 de agosto de 2023, mediante la cual impuso una multa a Servimetal por $2,000.00.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones